Argued December 21, 1978, affirmed April 23, 1979

STATE OF OREGON, *Respondent,*
*v.*
RALEIGH LEE SJOGREN, *Appellant.*
(Nos. 18-693, 18-694, CA 11309, 11310)
(consolidated cases)
593 P2d 1188

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Buttler and Gillette, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from his convictions for Unauthorized Use of a Vehicle, ORS 164.135, and Robbery in the Second Degree, ORS 164.405. Although both convictions arose out of the same criminal escapade, it consisted of two distinct parts or episodes. Both episodes occurred during the afternoon and evening of the same day. Defendant assigns as error the court's admission, over objection, of the evidence of the other episode in each trial. He was tried separately on each charge. The cases were consolidated on appeal.

The essential facts are:

Defendant and Gary Kinnaman met in a bar in Tillamook. Later they drove in Kinnaman's new automobile to a tavern in Netarts. Kinnaman placed the keys to his car on the bar. When Kinnaman went to the restroom, defendant borrowed the keys to get a pack of cigarettes from Kinnaman's car, and returned. Ten or 15 minutes later, Kinnaman again went to the restroom and two or three minutes after he returned, he realized that both his key ring and his car were missing. According to Kinnaman, defendant had taken the car without permission;[1] according to defendant, defendant had taken the car with permission. Kinnaman testified that he then called his mother to obtain the license number to his car. She called him back shortly to say that the car had been found, wrecked. Kinnaman then went home, and told the police officer who was there that his car had been taken without his consent. This ended the first episode.

The second episode began when defendant went to the house of Mr. Sorensen, which was near where defendant admittedly wrecked the car. Sorensen testified that defendant came to his door and asked for help. Sorensen testified that defendant said that the

---

[1] Kinnaman testified that he was "not in the habit" of loaning his new car.

car was his uncle's, and he asked Sorensen to drive him to his uncle's house in Hemlock, a community south of Tillamook. While on the way, defendant asked Sorensen to stop at a rest area. After defendant returned from the restroom, defendant came over to the driver's side, opened the door, and said, "Move over. I am taking over." Defendant at that time had a sleeve of his jacket pulled down over his hand, so that it looked as if he were hiding a gun in his sleeve, and kicked Sorensen several times. Sorensen then grabbed the keys and fled out the other side of the car; defendant yelled, "Stop or I'll shoot!" Sorensen ran across the parking lot in a zigzag pattern, and found refuge in a motor home. Defendant circled the motor home and, finding that he could not get in, left the area.[2]

Defendant's version of what happened after the wreck is quite different. He said that Sorensen agreed to take him only as far as the rest area, and that Sorensen did so, without incident, after which defendant hitchhiked, obtaining a ride on a truck. Defendant testified that he had never owned a handgun and that the jacket he had been wearing was too small for him, making a pretended or actual hiding of a gun in the sleeve, such as Sorensen described, impossible. Defendant admitted that he told Sorensen that the car he had wrecked belonged to his uncle, because he thought that the identity of the car's owner was none of Sorensen's business. Defendant admitted that he did not try to contact Kinnaman and tell him what had happened to Kinnaman's car.

■ Oregon courts generally treat the admissibility of other crimes simply as a special application of relevance analysis. Hence, we first examine the evidence to determine whether it is probative of an issue in the case (other than the probability that defendant committed the crime charged because he committed

---

[2] The statutory definition of robbery includes "committing or attempting to commit theft * * *." *See* ORS 164.395(1), 164.405(1), 164.415(1).

another crime). We then balance this probativeness against the prejudicial effect the evidence may have. *See, e.g., State v. Manrique,* 271 Or 201, 205, 531 P2d 239 (1975); *State v. Schoen,* 34 Or App 105, 578 P2d 420, *rev den* 283 Or 503 (1978). Relevant factors to consider are:

> "'"* * * [T]he actual need for the other-crimes-evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, * * * the degree to which the jury will probably be roused by the evidence to overmastering hostility." McCormick, Evidence 326, 332, § 157 (1954).' *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971); *State v. Williams, supra." State v. Hockings,* 29 Or App 139, 147-48, 562 P2d 587, *rev den* 1977, *cert den* 434 US 1049 (1978).

In the trial of the case on unauthorized use of Kinnaman's car, the state had Sorensen testify in rebuttal to the defendant's testimony about what he did following the wreck of Kinnaman's car. The state argues that Sorensen's testimony is relevant to show defendant's intent, flight, and consciousness of guilt, and to complete the picture of the crime.

■ The argument that the testimony is necessary *to* give a complete picture of the crime is unconvincing. Kinnaman, another person who had been at the bar, and defendant testified concerning the events in the bar. Defendant admitted that he had driven and wrecked Kinnaman's car and then fled, eventually to Washington. Sorensen's testimony served only to contradict defendant's testimony on details of flight. The state may not use its cross-examination of the defendant to open the door to rebuttal on collateral matters. *State v. Jackson,* 31 Or App 645, 571 P2d 523 (1977), *rev den* 281 Or 323 (1978). Furthermore, the testimony was not necessary to prove defendant's consciousness of guilt or flight; he testified to both

upon cross-examination. *Cf., State v. Olds,* 35 Or App 305, 581 P2d 118, *rev den* 284 Or 80a (1978) (where defendant was apprehended in Pennsylvania, evidence of his crime spree during flight in Oregon and Idaho was inadmissible).

 One purpose of examining other crimes evidence carefully before determining whether it would be properly admitted is to avoid using such evidence to show that because defendant has committed another, usually similar, crime, he is likely to have committed that in question. Courts have recognized that, as probative as such evidence may be of such a proposition, it is even more prejudicial. *See, e.g., State v. Manrique, supra,* 271 Or at 205-06. This problem is brought to the fore when the state proffers defendant's commission of a similar crime to prove the necessary intent for the crime for which defendant is being tried.

In *State v Sicks,* 33 Or App 435, 576 P2d 834 (1978), we noted:

" * * * Where the charged acts, if proven, would by themselves strongly indicate the required state of mind, evidence of other similar acts should generally be admitted only if defendant concedes the alleged act but claims that it was inadvertent or innocent." (Citations omitted.) 33 Or App at 438.

Here defendant admits that he took Kinnaman's car, but alleges that he had permission, so that the taking was innocent. His attempt to take Sorensen's car was relevant to prove that defendant intended to obtain a car that day noninnocently. Sorensen's testimony was properly admitted.

█ In the trial on the alleged robbery of Sorensen's car, the state called Kinnaman as part of its case in chief. Kinnaman gave essentially the same testimony he had given in the trial on the unauthorized use of his own car.

The state argues that Kinnaman's testimony is admissible to present a complete account of the crime

and to establish defendant's intent and motive in his attempt to obtain Sorensen's car.

Kinnaman's testimony is germane to the question of motive and completeness of account of the crime. The testimony places defendant near Sorensen's house with a motive, getting away from the scene of the wreck of a car he took without authorization to obtain a getaway vehicle by one means or another. *See State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), *rev den* (1976) (prior crime must be such that had it not been committed, the crime for which defendant is charged would not occur); *see generally State v. Long,* 195 Or 81, 244 P2d 1033 (1952). The testimony is more probative than prejudicial and therefore was properly allowed.

Affirmed.