Argued and submitted July 30, affirmed September 29, 1980

# STATE OF OREGON,
*Respondent,*

*v.*

# CLIFFORD RALPH MITCHELL,
*Appellant.*

## (No. 10-79-03392, CA 15130)

617 P2d 298

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause and filed the brief for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John C. Bradley, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant was charged with manslaughter in the first degree (ORS 163.118) for causing the death of Savanna Wheeler, his girl friend's fifteen-month-old daughter. After waiving his right to a jury trial, he was found guilty by the trial court. On appeal he raises issues relating to the admissibility of certain evidence, the sufficiency of the evidence to support the verdict, and the propriety of sentencing him to pay costs. We affirm.

Defendant first argues that the trial court erred in sustaining several objections to testimony relating to his good character. A defendant in a criminal action is entitled to offer evidence to demonstrate his good character. *State v. Porter,* 32 Or 135, 49 P 964 (1897). It is well established, however, that the accused's character may be proved only by showing his general reputation in the community, not by specific acts of good conduct. *State v. Curtis,* 20 Or App 35, 530 P2d 520, *rev den* (1975). Defendant himself offered to testify that on one occasion he apparently saved the life of Savanna Wheeler. This incident did not speak to defendant's general reputation and the testimony was, therefore, properly excluded. The trial court also did not allow two of defendant's witnesses to testify that he had good interaction with and behaved well around their children. The proffered testimony was based solely on the witnesses' personal knowledge and observations, and as such could not logically be divorced from particular conduct of the defendant. In each case, the testimony encompassed only the individual witness's perception of the defendant and not that of the community. Accordingly, it, too, was properly excluded.

Defendant next argues that the court erred in admitting testimony relating to statements made by him to the victim's mother while he was in custody. Following his arrest, defendant had two, admittedly voluntary conversations with the investigating police officer, Sergeant Smith. After the second conversation, defendant invoked his right to remain silent and

have an attorney present. He also requested to speak with the victim's mother. His request was granted; however, Officer Smith told defendant that he would not be permitted to see her alone and remained present in the room during the conversation. At trial the officer testified as to statements he overheard during this conversation.

Defendant contends that his right to remain silent was violated because Officer Smith's approval of the meeting was a "calculated" attempt "to induce defendant to make incriminating statements." Defendant argues that the officer thereby exercised a subtle form of coercion rendering the statements involuntary and inadmissible.

Even if we were to accept this argument, we would nonetheless be compelled to affirm on this point. The statements which Officer Smith overheard and to which he was allowed to testify were nearly identical to statements previously given by defendant to the officer directly. Since at trial Officer Smith repeated, without objection, the statements made to him directly, no prejudice could have resulted from admitting the statements made by the defendant during his subsequent conversation with the victim's mother. If there was any error, it was harmless. *See State v. O'Quist,* 34 Or App 693, 579 P2d 871, *rev den* (1978).

For his third assignment, defendant contends that the trial court erred in denying his motion for acquittal. He asserts there was insufficient evidence to allow the trial court to find beyond a reasonable doubt that he acted "recklessly under circumstances manifesting extreme indifference to the value of human life." ORS 163.118(1)(a). Generally, in a criminal prosecution, proof of the defendant's mental state must rest on inferences drawn from the evidence concerning the action element of the crime. *State v. Draves,* 18 Or App 248, 524 P2d 1225 *rev den* (1974). On appeal after conviction, conflicts in the evidence are treated as having been resolved in favor of the state. *State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974). In this

case there was ample evidence from which the trial court could have found that defendant, while in a state of extreme anger, caused young Savanna's death by intentionally and forcefully striking her in the abdomen with his fist. Considering these circumstances, as well as the age and defenselessness of the victim, the trial court could quite reasonably have drawn the inferences necessary to find defendant guilty beyond a reasonable doubt.

Finally, defendant argues that he was improperly sentenced to pay costs incurred by the state in prosecuting him, ORS 161.665,[1] including the costs of providing court- appointed counsel. Defendant does not object to the items of expense, but rather claims that he is not and will not be able to repay them. ORS 161.665(3). In *State v. Fuller,* 12 Or App 152, 504 P2d 1393, *rev den* (1973), *aff'd sub nom Fuller v. Oregon,* 417 US 40, 94 S Ct 2116, 40 L Ed 2d 642 (1974), we interpreted this provision of Oregon's recoupment statute as allowing imposition of costs only if the defendant has ceased or likely will cease to be indigent. We stated:

> "A defendant is * * * required to repay appointed counsel's fee only if and when he is no longer indigent. If there is no likelihood that a defendant's indigency will end, a judgment for costs cannot be imposed. [citation omitted] If there appears to be the

---

[1] ORS 161.665 reads as follows:

"(1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of

future possibility of ability to repay at the time of sentencing, but the defendant remains an indigent, the judgment for costs cannot be collected. The court retains jurisdiction to determine ability to pay. * * * " 12 Or App at 159.

 The trial court ordered defendant to repay these specially incurred costs within the term of the sentence imposed, 20 years. In doing so, the court specifically found that defendant is "able-bodied and has demonstrated an ability to make sufficient earnings to pay the costs requested." The record also indicates that defendant earned an income prior to his arrest and, more importantly, that there is a likelihood of his being paroled prior to having fully served his sentence.[2] These factors demonstrate a likelihood that defendant's indigency will end and constitute an adequate basis for initial imposition of costs. If defendant remains indigent and is unable to pay the amount imposed, he may petition the circuit court for remission. ORS 161.665(4).

Affirmed.

---

costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under ORS 161.675."

[2] An order to pay costs is not enforceable during the period of imprisonment unless the court specifically finds that the defendant has assets available at the time of sentencing. ORS 161.675(1). No such finding was made here.