Argued and submitted July 29, 1987, affirmed June 1, 1988

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT GRAVES MIEBACH,
*Appellant.*

(10-85-09164; CA A40904 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

JACQUELINE SUZETTE MIEBACH,
*Appellant.*

(10-86-02535, 10-85-09163; CA A42496, A42651)
(Cases consolidated)

755 P2d 133

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendants appeal convictions for first degree burglary, asserting that the trial court erred by denying their motions to suppress evidence discovered in their pickup during the execution of a search warrant. They argue that the use of an electronic tracking device ("beeper") invalidated the search and that the police lacked probable cause to stop and arrest them. They also challenge the amount of restitution ordered. The cases, although tried separately, are consolidated on appeal. We affirm.

The Eugene Police Department acquired information indicating that defendants, who are husband and wife, were responsible for a number of daylight residential burglaries. On October 22 or 23, the police attached a beeper to the underside of defendants' pickup. On October 23, police began surveillance of defendants and saw them drive to affluent residential neighborhoods, make several stops and appear to "case" a number of homes on foot. Police checked the area after defendants got back in their car and found indications of illegal entry at two homes. Defendants' vehicle was stopped, and they were arrested. Their vehicle was impounded and searched the next day, pursuant to a search warrant.

Before trial, defendants moved to suppress evidence discovered during the search. They raised two issues in the trial court. First, they argue that the beeper was illegally installed, because the police officer trespassed on a parking area which was not open to the public in order to place the device on the vehicle. They did not argue that there was a trespass *on the vehicle* or that police monitoring of the signal was illegal. In fact, counsel for defendants said that there would have been a lawful attachment of the device and lawful monitoring if it had been installed when their car was on a public roadway or other area where defendants did not have an expectation of privacy. They argued that the information derived as a result of the trespass onto the parking area must be excised from the search warrant affidavit. Second, they argued that there was no probable cause to stop and arrest them and, consequently, that any information in the affidavit which resulted from the unlawful stop and arrest cannot be used as a basis for a search warrant. The court denied the motions to suppress.

We held in *State v. Campbell,* 87 Or App 415, 742 P2d 683 (1987), *rev allowed* 305 Or 21 (1988), that the installation and monitoring of an electronic tracking device on a motor vehicle is a seizure within the meaning of Article I, section 9, of the Oregon Constitution:

> "Although the state's trespass did not physically deprive defendant of his automobile or, by itself, provide the state with information about defendant, it provided the state with a technologically enhanced means to track every movement that defendant made in his car. Accordingly, the installation of the beeper and police monitoring of it substantially transformed defendant's automobile from his private personal effect to a tool of the state. The beeper continually broadcast a signal to the police, informing them of the location of defendant's automobile and, therefore, of defendant himself. The automobile had been, in a very real sense, converted to the state's use. An interference of that scope with defendant's possessory interest is substantial." 87 Or App at 420.

On appeal, defendants have abandoned the contention made at trial and now embrace the rationale of our holding in *Campbell.* The state protests that we ought not address defendants' contention, because it was not litigated below.

█ It is a general principle of appellate review that a question or contention not preserved in the trial court will not be considered on appeal. *State v. Linthwaite,* 295 Or 162, 665 P2d 863 (1983); *State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975); *State v. Abel,* 241 Or 465, 406 P2d 902 (1965); *State v. DeWhitt,* 82 Or App 55, 727 P2d 151 (1986); *State v. Ponce,* 43 Or App 665, 603 P2d 1243 (1979). Although lack of preservation does not *ipso facto* preclude review, we address improperly preserved issues only in exceptional circumstances. We conclude that this is not one of those instances. Defendants consciously and specifically framed the issues at trial and the court decided the factual and legal questions posed. They do not now make any contention made to the trial court; consequently, there is no issue to address regarding placement or use of the beeper. We decline, as did the trial court, to excise the information contained in the search warrant affidavit that was obtained as a direct result of police surveillance before defendants' car was stopped.

We next consider defendants' contention that the stop and their arrest was unlawful, because the police did not

have probable cause to believe that they had committed a crime. The state concedes that the stop was for the purpose of arresting defendants and that, therefore, there had to be probable cause to support the stop and arrest. Defendants' principal argument is that, when they were stopped and arrested, the police officer had not yet determined that any burglary had occurred.

The trial court upheld the stop on two bases: first, the police had probable cause based on their information before the arrest; second, had defendants not been stopped at that time, the officers, who had them under constant surveillance, would have stopped them after they confirmed the burglary, for which defendants were charged, 16 minutes later.

The information that the police had before stopping defendants is contained in the search warrant affidavit, the first part of which relates information supplied by an unnamed informant. Defendants do not challenge the veracity of the informant or the reliability of the information. The police obtained various items of property from the informant that had been stolen in several daylight burglaries in the Eugene area. The informant said that the property had been purchased from defendants, who told the informant that they had taken the property in daylight burglaries. The informant also said that Jacqueline Miebach said that she had acquired identification in the name of "Gina Carrara" and had used it at a local pawn shop. The affiant's investigation disclosed that a woman using identification in that name had pawned some property in a local pawn shop. Both defendants have criminal records. *See, e.g., State v. Robert Miebach,* 52 Or App 709, 629 P2d 1312 (1981).

While under surveillance in the neighborhood where the burglary occurred, defendants went out of view behind some houses. A resident reported to the police that a woman matching the description of Jacqueline Miebach was in her back yard. When confronted, the woman made an excuse and left. One officer checked the area and found the sliding glass door of one residence open and wet leaves on the floor inside. Shortly thereafter, an officer saw Jacqueline drive down a hill, go out of sight momentarily, make a "U" turn and then come back past the officer. Robert was then with her, which indicated that she had picked him up right after making the "U"

turn. Another officer saw Robert reaching behind the seat of the vehicle, and he appeared to be putting some items there. Defendants were then stopped by the officers. When the officers approached defendants' vehicle, they saw a VCR behind the seat.

About 16 minutes after the stop and arrest, an officer investigating the area from which defendants had just left reported that a door of one of the houses was partly open and that there were fresh pry marks on the door. No one was home at the house. Through a window he saw a TV stand with an empty shelf with disconnected wires lying across it. There were video cassettes in view, but no VCR. The owners of the home later confirmed that a VCR had been taken.

■ The information that the police had before the stop, including that two of the houses defendants had been "casing" showed signs of entry, established probable cause to believe that defendants had committed burglary. *See State v. Stiles,* 68 Or App 297, 680 P2d 1016, *rev den* 297 Or 459 (1984). The stop and arrest were lawful; consequently the information obtained as a result is properly included in the search warrant affidavit. The warrant was lawfully issued, and the court did not err in denying defendants' motions to suppress.

■ Defendants' last assignment is that the restitution which the court ordered each of them to pay is excessive. They agreed with the prosecutor that they would disclose other burglaries that they had committed, to assist in locating and returning some of the stolen property and to make restitution to the victims. Each defendant was sentenced by a different judge. Robert was sentenced to 10 years in prison and ordered to pay $8,023 in restitution. Jacqueline was placed on probation for five years and ordered to pay $89,270.86 in restitution.[1] Defendants do not dispute that the amounts were properly calculated, but argue that the court did not take into consideration their ability to pay the restitution.

Both defendants are young and intelligent and have at times been gainfully employed. The court was entitled to find, as it did, that both are capable of meeting the restitution obligations in the future. *See State v. Gardner,* 67 Or App 404,

---

[1] She was sentenced to five years in prison on an unrelated conviction.

679 P2d 306, *rev den* 297 Or 339 (1984); *State v. Mitchell,* 48 Or App 485, 617 P2d 298 (1980). They are protected in the event of future indigency by ORS 161.675 and ORS 161.685.

Affirmed.