#30944-a-MES
**2025 S.D. 61**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SOLOMAN B. LONGCHASE,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HYDE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARGO D. NORTHRUP
Judge

\* \* \* \*

JUSTIN L. BELL of
May, Adam, Gerdes & Thompson LLP
Pierre, South Dakota                    Attorneys for defendant
                                        and appellant.


MARTY J. JACKLEY
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
OCTOBER 7, 2025
OPINION FILED **11/05/25**

#30944

SALTER, Justice

[¶1.] Soloman Longchase appeals the circuit court's denial of his motion to dismiss his indictment based on an asserted speedy trial violation. Longchase also disputes the constitutionality of the circuit court's order requiring him to reimburse the county for court-appointed attorney fees. We affirm.

## Factual and Procedural History

[¶2.] On September 21, 2022, the Hyde County State's Attorney filed a criminal complaint charging Soloman Longchase with (1) aggravated assault (domestic), (2) aggravated kidnapping, (3) grand theft, (4) interference with emergency communication, and (5) false impersonation to deceive law enforcement. All five charges arose from conduct that occurred on August 20, 2022.[1] The same day the criminal complaint was filed, the Hyde County State's Attorney requested a warrant for Longchase's arrest, which the court issued the next day.

[¶3.] The warrant listed Longchase's last known location as the Hughes County Jail, where he was being held for unrelated Hughes County charges. The warrant also stated that Longchase was to be held without bond "until further order of the [c]ourt." The record does not contain a completed return for the warrant, and it appears Longchase never made an initial appearance on the complaint.

---

1. Though not relevant to our disposition of the issues before us, the charges are related to a series of incidents involving Longchase and a female victim with whom he was romantically involved that occurred in rural Hyde County and in Highmore. Law enforcement reports included in the presentence investigation indicate that Longchase assaulted and held the victim against her will and, when confronted by a law enforcement officer, provided a false name, fled on foot, and later stole a pickup.

[¶4.] On December 20, 2022, a Hyde County grand jury returned a five-count indictment listing the same offenses contained in the September complaint. Nine days later, the circuit court issued a second "no bond" warrant for Longchase's arrest. Again, this warrant identified Longchase's last known location as the Hughes County Jail, where he continued to be held on unrelated charges.

[¶5.] On January 30, 2023, the judge presiding over Longchase's Hughes County criminal cases granted Longchase a three-day medical furlough. But Longchase did not return to custody at the end of his furlough, and Hughes County prosecutors charged him with escape.

[¶6.] Longchase remained a fugitive from February 1, 2023, through December 13, 2023, when he was rearrested. He was again booked into the Hughes County Jail where he remained while awaiting the resolution of his Hughes County charges. Longchase appeared before the circuit court on April 9, 2024, for what was described as a post-indictment initial appearance on his Hyde County charges. The court set a cash bond and indicated it would appoint counsel. On this latter topic, the court advised Longchase that court-appointed counsel is "not a gift. That's something that you would have to pay back at the conclusion of your case."

[¶7.] Longchase appeared with his appointed counsel for an arraignment on May 14, 2024. Shortly thereafter, he filed a motion to dismiss based on an alleged violation of his constitutional right to a speedy trial. After considering each of the speedy trial factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), the circuit court denied his motion.

[¶8.] Significantly, Longchase and the State then entered into a written plea agreement under which Longchase agreed to plead guilty to grand theft and simple assault. In exchange, the State agreed to dismiss the remaining charges and forbear from seeking an enhanced sentence by filing a part II habitual criminal information.

[¶9.] At the change of plea hearing, the circuit court reviewed Longchase's constitutional rights with him before taking, and ultimately accepting, his guilty plea. Relevant here is the following exchange:

> **The court:** You have the right to plead not guilty and make the State prove what it says you've done in the Superseding Information.
>
> *You would have a right to a speedy public trial* before a jury made up of 12 citizens of Hyde County. The 12 jurors would have to agree unanimously that the State had proven each element of any charge against you beyond a reasonable doubt before you could be found guilty of the charge.
>
> If you decide that you want to enter the written plea agreement and plead guilty . . . , of course you would be giving up your right to have a jury trial. Do you understand that, sir?
>
> **Longchase:** Yes.

(Emphasis added.)

[¶10.] At sentencing, Longchase objected to the recoupment of court-appointed attorney fees as a part of his sentence. He argued that the circuit court was required to make particularized findings of fact regarding his ability to pay, and even if the court conducted an ability-to-pay analysis, he claimed that

recoupment was not authorized because he lacked the present ability to repay the court-appointed attorney fees.

[¶11.] Somewhat ironically, however, Longchase—himself—acknowledged in his presentence investigation that he was inclined to work, and he suggested that part of his sentence should include the obligation to repay attorney fees. And though not specifically designated as an analysis of his ability to pay court-appointed attorney fees, the circuit court did consider Longchase's ability to work and earn an income, including his lawyer's argument that Longchase was capable of gainful employment and was motivated to earn money to pay restitution:

> He's had employment. He's worked in fencing and other manual labor jobs and wants to do that, knows that there's going to be restitution at issue in this case, wants to get back is what he would like to do as relates to getting employment, paying back that restitution, paying back society and the victims in this case as relates to this matter.

[¶12.] The circuit court essentially accepted Longchase's assertion. It found that "Mr. Longchase indicates that he's been employed throughout his life, I believe construction type work, and believes that he still has the ability to continue that work once he's released from prison."

[¶13.] The court sentenced Longchase to eight years in prison with three years suspended. As for his court-appointed attorney fees, the court stated:

> I think that attorney's fees are appropriate. . . . There's no reason that Mr. Longchase will not be able to be employed once he is out of the penitentiary and, of course, those wouldn't be due and owing until he was out of the penitentiary to be able to work and make those payments.

[¶14.] On appeal, Longchase raises the following two issues:

1. Whether the circuit court erred when it denied Longchase's motion to dismiss under the theory that his prosecution violated his constitutional right to a speedy trial.

2. Whether the circuit court erred when it ordered Longchase to pay court-appointed counsel fees.

## Analysis and Decision

### *Speedy trial claim after a guilty plea*

[¶15.] The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. The speedy trial right applies to the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222–23 (1967).[2] However, before we can address the merits of Longchase's speedy trial argument, we must first determine whether the issue is properly before us.

[¶16.] Though Longchase initially challenged his prosecution through a motion to dismiss based upon an asserted violation of his constitutional right to a speedy trial, he ultimately pled guilty and did *not* exercise his right to a jury trial. By doing so, the State argues on appeal that Longchase has waived any argument that his speedy trial right was violated. We agree.

---

2. We have not recognized any greater speedy trial protections under Article VI, § 7 of the South Dakota Constitution than those recognized under the Sixth Amendment. *See State v. Starnes*, 200 N.W.2d 244, 248 (S.D. 1972) (noting that the South Dakota Constitution "is in accord with" the Sixth Amendment). For this reason, we will refer to a single speedy trial right here, despite the fact it may derive from multiple sources.

[¶17.] We have long held that "a voluntary and intelligent plea of guilty waives a defendant's right to appeal all nonjurisdictional defects in the prior proceedings." *State v. Ceplecha*, 2020 S.D. 11, ¶ 29, 940 N.W.2d 682, 692 (quoting *State v. Cowley*, 408 N.W.2d 758, 759 (S.D. 1987)). Notably, Longchase does not contend that his guilty plea was improvident because it was involuntary or that he waived his rights without knowing what they were. Instead, he argues that a denial of the constitutional right to a speedy trial is a jurisdictional defect that cannot be waived through a guilty plea.

[¶18.] Supporting his claim is a slender reed of erroneous dicta from our 1986 decision in *State v. Grosh*, 387 N.W.2d 503 (S.D. 1986). In *Grosh*, we held, among other things, that the defendant's knowing and voluntary guilty plea waived his claims that he was denied counsel of his choice and a jury trial because they were nonjurisdictional defects. *Grosh*, 387 N.W.2d at 507–08. However, in the course of this otherwise correct conclusion, we stated that "he waived the nonjurisdictional defect he asserts on appeal, because such defect, unlike double jeopardy and *the right to a speedy trial*, does not prevent a trial from taking place." *Id.* at 507 (emphasis added).

[¶19.] On its face, the reference to the speedy trial right was dicta because it was unnecessary for our decision, which involved different asserted constitutional rights. *See Moeller v. Weber*, 2004 S.D. 110, ¶ 44 n.4, 689 N.W.2d 1, 15 n.4 ("*Dicta* are pronouncements in an opinion unnecessary for a decision on the merits."). But beyond this, the *Grosh* Court's two illustrations of jurisdictional defects—double jeopardy and speedy trial—are not of the same ilk.

[¶20.]	A double jeopardy defect is jurisdictional because "the State may not convict [a defendant] no matter how validly his factual guilt is established." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). A "guilty plea, therefore does not bar" a double jeopardy claim on appeal. *Id.* In essence, "the preclusive effects" of a defendant's guilty plea do "not apply to constitutional claims which go 'to the very power of the State to bring the defendant into court to answer the charge brought against him.'" *United States v. Gaertner*, 583 F.2d 308, 311 (7th Cir. 1978) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

[¶21.]	But the constitutional right to a speedy trial is different. The purpose underlying the right to a speedy trial "is to guarantee that the accused's right to a fair trial is not substantially prejudiced by pre-trial delay, or, put another way, to lend assurance that factual guilt is validly established." *Id.* Though a speedy trial violation may "preclude the establishment of guilt by trial, . . . a finding of guilt by a proper plea remains a viable option." *Id.*; *United States v. O'Donnell*, 539 F.2d 1233, 1237 (9th Cir. 1976) (noting that the purpose of a speedy trial under the Sixth Amendment is "to insure that factual guilt is validly established"), *superseded by statute on other grounds as recognized in United States v. Smith*, 60 F.3d 595, 598 (9th Cir. 1995).

[¶22.]	In fact, we recognized as much in *State v. Miller*, 2006 S.D. 54, 717 N.W.2d 614. Though we did not express it in terms of jurisdiction, we noted the well-established rule that a voluntary and knowing plea of guilty waives "three important federal rights . . . 1) the privilege against compulsory self-incrimination, 2) *the right to a speedy trial*, and 3) the right to confront one's accusers." *Miller*,

2006 S.D. 54, ¶ 14, 717 N.W.2d at 618 (emphasis added) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)).[3]

[¶23.]     The cases from jurisdictions across the country supporting this view are legion. *See State v. Watson*, 126 N.E.3d 289, 291 (Ohio Ct. App. 2018) (holding that "a defendant, by entering a guilty plea, generally waives both the statutory and the constitutional right to a speedy trial"); *United States v. Cruz*, 455 F. App'x 508, 510 (5th Cir. 2011) (noting that a valid guilty plea waives a speedy trial claim based on the Sixth Amendment); *Rowe v. State*, 735 So. 2d 399, 400 (Miss. 1999) (en banc) ("This Court has found that a guilty plea waives the right to a speedy trial, whether that right is of constitutional or statutory origin."); *People v. Depifanio*, 480 N.W.2d 616, 616 (Mich. Ct. App. 1991) (per curiam) (holding that "an unconditional guilty plea waives a claim of violation of federal and Michigan constitutional rights to a speedy trial"); *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam) (recognizing that a guilty plea waives a "defendant's right[] to a speedy trial"); *Parmley v. State*, 397 So. 2d 183, 183 (Ala. Crim. App. 1980) ("A claim of a denial of a speedy trial in violation of the Sixth Amendment is waived by an unqualified plea of guilty." (quoting *Bailey v. State*, 375 So. 2d 519, 521 (Ala. Crim. App. 1979))); *United States v. Saldana*, 505 F.2d 628, 628 (5th Cir. 1974) (per curiam) ("The issue of the right to a speedy trial is non-jurisdictional in nature." (citation omitted)); *Cox v. Lockhart*, 970 F.2d 448, 453 (8th Cir. 1970) (agreeing that the defendant's guilty plea waived his Sixth Amendment speedy trial claim).

---

3.     The State correctly points out that we have also held that a valid guilty plea waives a defendant's right to a speedy trial under SDCL 23A-44-5.1—our speedy trial rule. *State v. Anderson*, 417 N.W.2d 403, 405 (S.D. 1988).

[¶24.] Here, Longchase entered a knowing and voluntary guilty plea. The circuit court advised him that he had a right to a speedy trial and that he would be waiving his right to a trial altogether if he pled guilty. Under these circumstances, Longchase waived his constitutional speedy trial right, and we need not address the merits of his argument under *Barker v. Wingo*.

### Recoupment of costs for court-appointed counsel

[¶25.] "The Sixth Amendment to the United States Constitution guarantees" all criminal defendants the right to counsel. *Duffy v. Cir. Ct., Seventh Jud. Cir.*, 2004 S.D. 19, ¶ 10, 676 N.W.2d 126, 130; U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). In *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963), the United States Supreme Court recognized that the "appointment of counsel for an indigent criminal defendant [is] a fundamental right, essential to a fair trial." (citation modified). "In South Dakota, the [L]egislature has provided assistance of counsel for indigents since 1901." *Duffy*, 2004 S.D. 19, ¶ 11, 676 N.W.2d at 130; *see also* SDCL 23A-40-6 (requiring the appointment of counsel upon a showing of indigency).

[¶26.] Yet, in an effort to recoup some of the related public expenses, the Legislature permits trial courts to order a defendant to reimburse counties for the fees they pay to court-appointed counsel:[4]

> If the court finds that funds are available for payment from or on behalf of a defendant to carry out, in whole or in part, the provisions of [Chapter 23A-40 addressing counsel for indigent

---

4.  The United States Supreme Court has recognized "that state recoupment statutes may betoken legitimate state interests," such as the requirement that states appoint "counsel for indigents in widening classes of cases" and "expanding criminal dockets." *James v. Strange*, 407 U.S. 128, 141 (1972).

> defendants], the court may order that the funds be paid, as court costs or as a condition of probation . . . as a reimbursement to the county or municipality . . . . The court may also order payment to be made in the form of installments or wage assignments, in amounts set by a judge of the circuit court or a magistrate judge . . . .

SDCL 23A-40-10; *see also* SDCL 23A-40-11 ("The services rendered and expenses incurred" on behalf of an individual's defense "are a claim against the person and that person's estate, enforceable according to law in an amount to be determined by a judge of the circuit court or a magistrate judge.").

[¶27.]     Notably, Longchase states that he "is not making a facial challenge to the constitutionality of either" SDCL 23A-40-10 or -11.  Instead, he asserts an as-applied challenge, arguing the circuit court violated his Sixth Amendment right to counsel and right to due process by ordering him to repay the cost of his court-appointed counsel without first analyzing his ability to pay.  For South Dakota's recoupment statutes to be applied constitutionally, Longchase asserts that "a sentencing judge must have an evidentiary hearing and perform an analysis regarding the ability to repay at the time of sentencing."  We review this issue de novo.  *Miller*, 2006 S.D. 54, ¶ 11, 717 N.W.2d at 618.

[¶28.]     Under the circumstances, our review of Longchase's constitutional claim is exceedingly narrow; we need only decide whether the circuit court's procedure for imposing the recoupment of attorney fees as part of Longchase's

sentence deprived him of either his right to counsel or due process.[5]  Based on the record before us, we conclude it did neither.

a.      *Right to counsel*

[¶29.]      Longchase's Sixth Amendment argument appears similar to the one made by the petitioner in *Fuller v. Oregon*, 417 U.S. 40 (1974).  Longchase claims "that a defendant's knowledge that he may remain under an obligation to repay the expenses incurred in providing him legal representation might impel him to decline the services of an appointed attorney and thus 'chill' his constitutional right to counsel."  417 U.S. at 51.  But as the Supreme Court noted in *Fuller*, "this reasoning is wide of the constitutional mark."  *Id.* at 52.

[¶30.]      South Dakota's recoupment statutes do not deprive defendants of the effective assistance of counsel.  At all times, an indigent defendant in South Dakota "is entitled to free counsel *when he needs it*—that is, during every stage of the criminal proceedings against him."  *Id.* at 52–53 (emphasis added) (citation modified); SDCL 23A-40-6.[6]  "The fact that an indigent who accepts state-appointed

---

5.      Although Longchase asserts both the Sixth Amendment right to counsel and the Fifth Amendment right to due process, he often blends them into a generic "unconstitutional" reference.

6.      SDCL 23A-40-6 provides in pertinent part:

> In any criminal investigation or in any criminal action or action for revocation of suspended sentence or probation in the circuit or magistrate court or in a final proceeding to revoke a parole, if it is satisfactorily shown that the defendant or detained person does not have sufficient money, credit, or property to employ counsel and pay for the necessary expenses of his representation, the judge of the circuit court or the magistrate shall, upon the request of the defendant, assign . . . counsel for his representation . . . .

legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Fuller*, 417 U.S. at 53; *see White Eagle v. State*, 280 N.W.2d 659, 661 (S.D. 1979) (stating that an "accused . . . has no right to be forever free from any liability to reimburse the county or state for providing said counsel").

[¶31.]      Although we can understand the potential dispiriting effect that a state's recoupment practice could conceivably have on a defendant's decision to accept court-appointed counsel, those concerns are not present here. *See Fuller*, 417 U.S. at 51 (discussing concerns that knowledge of a state's recoupment practice may "deter or discourage many defendants from accepting the offer of counsel despite the gravity of the need for such representation" (quoting *In re Allen*, 455 P.2d 143, 144 (Cal. 1969))). The record here simply does not support the claim that Longchase's constitutional right to counsel was chilled.

[¶32.]      Before counsel was appointed, the circuit court advised Longchase that the appointment of counsel is "not a gift"; it is "something that [he] would have to pay back at the conclusion of [his] case." *See White Eagle*, 280 N.W.2d at 661 (agreeing "with appellant that an accused should be" advised that attorney fees may be imposed as part of a sentence). While the court's appraisal could have advised Longchase that the obligation to repay attorney fees was contingent on his future ability to pay, *see id.* at 662, nothing in the record suggests that Longchase's knowledge of recoupment discouraged him from accepting court-appointed counsel. Nor is there any indication that a potential recoupment obligation otherwise

impacted the course of his criminal proceedings by, for instance, forgoing

representation or a trial because of the added expense he might incur.

   b.   *Due process*

[¶33.]   Longchase's due process argument is equally unavailing. "There are

two types of due process [that] are protected by the Due Process Clause of the

Fourteenth Amendment of the United States Constitution"—procedural and

substantive due process. *Tri Cnty. Landfill Ass'n, v. Brule County*, 2000 S.D. 148,

¶¶ 13–14, 619 N.W.2d 663, 668.  Procedural due process ensures that "certain

substantial rights—life, liberty, and property—cannot be deprived except pursuant

to constitutionally adequate procedures." *Id.* ¶ 13 (citation modified).  Substantive

due process, on the other hand, "provides that certain types of governmental acts

violate the Due Process Clause regardless of the procedures used to implement

them." *Id.* ¶ 14 (citation modified).  Longchase does not allege that recoupment of

attorney fees violates his substantive due process rights.  We therefore focus our

analysis on whether the circuit court's procedures were constitutionally adequate.

[¶34.]   "Fundamentally, [procedural] due process requires notice and an

opportunity to be heard." *Hollander v. Douglas County*, 2000 S.D. 159, ¶ 17, 620

N.W.2d 181, 186 (citation modified).  "These basic guarantees must be granted at a

*meaningful time* and *in a meaningful manner*." *Id.* (emphasis added) (citation

modified).  Procedural due process is a flexible standard that "requires only such

procedural protections as the particular situation demands." *Tri Cnty. Landfill*,

2000 S.D. 148, ¶ 13, 619 N.W.2d at 668.

[¶35.] We believe Longchase's opportunities to argue against the recoupment of court-appointed attorney fees at the sentencing hearing satisfied his procedural due process rights. Both Longchase and his attorney were present at the sentencing hearing, which occurred before any repayment obligation was imposed. And Longchase was free to present evidence regarding his ability to work and earn an income. Under these circumstances, the sentencing hearing was provided at "a meaningful time," and it was conducted "in a meaningful manner." *See Hollander*, 2000 S.D. 159, ¶ 17, 620 N.W.2d at 186; *see also State v. Dudley*, 766 N.W.2d 606, 625 (Iowa 2009) (concluding that a hearing held after an order to pay court-appointed attorney fees but before judgment was entered satisfied due process).

[¶36.] Longchase also argues that the circuit court was obligated to make particularized findings relating to his ability to pay at the time of sentencing. But the text of SDCL 23A-40-10 does not support his assertion for two reasons.

[¶37.] First, there is no temporal time-of-sentencing restriction in the text of SDCL 23A-40-10. The statute contemplates the reimbursement of court-appointed attorney fees from both "available" funds and repayment over time "in the form of installments or wage assignments." It is not essential under SDCL 23A-40-10 that the defendant have the complete ability to repay the court-appointed attorney fees at the precise time of sentencing, especially where, as here, the obligation to pay will not arise until the defendant is released from prison.

[¶38.] And, second, there is no procedural requirement under SDCL 23A-40-10 for particularized ability-to-pay findings. Although we have traditionally required circuit "courts to enter findings of fact and conclusions of law when ruling

on a request for attorney fees" in civil cases, *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 30, 687 N.W.2d 507, 514, we have never imposed a similar requirement for the recoupment of court-appointed attorney fees in a criminal case.[7]

[¶39.] But regardless, the circuit court *did* make specific findings relating to Longchase's ability to pay. In relation to paying restitution, the court stated, "I believe after he is able to do some . . . services and some programming . . . he would be able to get out and start working again and paying for this restitution . . . ." And relating explicitly to attorney fees, the court noted, "There's no reason that Mr. Longchase will not be able to be employed once he is out of the penitentiary and, of course, those [payments] wouldn't be due and owing until he was out of the penitentiary to be able to work and make those payments." Taken together, these findings sufficiently consider Longchase's future ability to pay and the burden that repayment will impose. *See generally State v. Mitchell*, 617 P.2d 298, 301–02 (Or. Ct. App. 1980) (affirming the imposition of attorney fees based on a trial court's finding "that defendant is 'able-bodied and has demonstrated an ability to make sufficient earnings to pay the costs requested" and a record showing that the "defendant earned an income prior to his arrest").

[¶40.] These findings are also supported by the record available to the circuit court at the time of sentencing. For example, Longchase plainly affirmed his ability to repay his court-appointed attorney fees to the presentence investigation author,

---

7. The requirement that specific findings of fact and conclusions of law be made on requests for attorney fees in the civil context is necessitated by SDCL 15-6-52(a). But there is no specific corresponding rule in the criminal procedure context. *See* SDCL chap. 23A-27.

who wrote: "The defendant believes the following could be considered appropriate sentencing options in his case: fine, restitution to the victim(s), drug and alcohol treatment, not to use drug/alcohol, probation, apologies, *and attorney fees*." (Emphasis added).  In his presentence investigation statements advocating for probation, Longchase acknowledged that he "can work" and "*the state Needs to get paid*."  (Emphasis added.)

[¶41.]	Also included in the record before the circuit court was a separate presentence investigation prepared in April 2024 as part of Longchase's Hughes County escape case.  This 2024 presentence investigation described an established employment history: "The defendant is currently employed as a ranch hand for Dick Hanson and has worked there for over 15 years. . . .  He is paid $80 a day and works 40–60 hours a week."  Finally, the circuit court's findings about Longchase's ability to work and earn money are entirely consistent with comments from Longchase's attorney who asserted that "for the vast majority of his life" Longchase "has been gainfully employed, [and] wants to get back to where he can be gainfully employed again."

[¶42.]	Based on the entirety of the sentencing record, the circuit court made sufficient findings to support Longchase's future ability to pay.

## Conclusion

[¶43.]	Longchase waived his right to a speedy trial by entering an unconditional guilty plea.  Because Longchase received the assistance of appointed counsel at every critical stage of the criminal proceedings against him, the circuit court's order requiring him to reimburse his court-appointed attorney fees did not

deprive him of his constitutional right to counsel. Nor did the court's recoupment order deprive Longchase of due process; the order was not imposed until after a hearing at which Longchase had a meaningful opportunity to be heard. Finally, the circuit court's findings regarding Longchase's future ability to pay were sufficiently particular and adequately supported by the record. We therefore affirm the court's order denying Longchase's motion to dismiss and its order requiring Longchase to reimburse his court-appointed attorney fees.

[¶44.]        JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.