Argued and submitted July 12, 1982, reversed and
remanded with instructions February 16, 1983

## STATE OF OREGON,
*Respondent,*

*v.*

## NOEL GAY HARSHMAN,
*Appellant.*

(6170, 6173 6174, 6180, 6785;
CA A23239 (Control), CA A23240)
(Cases consolidated)

658 P2d 1173

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden, and Young, Judges.

YOUNG, J.

Warden, J., specially concurring.

YOUNG, J.

Defendant appeals his convictions, after a jury trial, for delivery of a controlled substance, ORS 475.992(1), and possession of a controlled substance. ORS 475.992(4). The charges arose out of the possession of nine pills and their delivery to an undercover informant on April 13, 1981. He assigns as error the admission of evidence of "other crimes"; the failure to grant a continuance or alternatively to exclude the other crimes evidence because of claimed pretrial discovery violations of ORS 135.805, *et seq;* the failure to merge the two convictions; and the revocation of his probation on four earlier drug related convictions. We reverse.

The undercover informant, Batsell, provided most of the evidence used to convict defendant. According to his testimony, on April 13, 1981, he and his girlfriend were driving from Lexington to Boardman, in Morrow County, when he saw defendant hitchhiking. Batsell did not know defendant but stopped and picked him up. Batsell engaged defendant in a conversation about drugs and asked if he knew where there was any cocaine. Defendant said that he had been "busted" twice before and had to be careful. After further conversation, however, defendant said that he would give Batsell "a sample" of some drugs that he had with him and handed Batsell nine pills, later determined to contain methamphetamine. During the conversation, defendant also stated that he had dealt in drugs in Seaside and Alaska. He said that he had "100 pounds" of drugs for sale and that Batsell could contact him at his father's tavern in Lexington if he wanted more.

Over defendant's objections, Batsell testified to the arrangement of an attempted, but cancelled, meeting with defendant in Lexington on April 15 and a successful meeting in the parking lot at the "Blue Bucket"[1] on April 17, at which time Batsell had purchased 800 pills from defendant for $250. The pills were later found to contain amphetamine and methamphetamine. Batsell's girlfriend testified to the conversation between Batsell and defendant.

---

[1] The Blue Bucket is described as "not located in Morrow County," where the initial transaction occurred and this case was tried.

She said that Batsell had asked defendant for drugs and that defendant had handed him some pills. She also testified that defendant had told Batsell to try the pills and that he could get more.

Although defendant did not testify, it is his contention, through his attorney's opening and closing statements, that the drug exchange did not take place and that Batsell, supported by his girlfriend, fabricated the entire story. To this end, his attorney attempted to show on cross-examination that the witnesses had a financial stake in securing drug convictions and that their testimony was unreliable. The attorney argued that defendant had been selected for the false charges because of his admitted prior involvement in drugs.

We first consider defendant's claim that the state failed to comply with statutory pretrial discovery. ORS 135.815 to 135.873. He argues that pursuant to ORS 135.865, the trial court should have excluded evidence of the Blue Bucket sale or, in the alternative, a continuance should have been granted.

On the morning of trial, the state gave notice of its intention to offer evidence of "other bad acts as evidence of motive." The "bad acts" was the Blue Bucket sale on April 17, four days after defendant gave Batsell the nine pills. When the state gave notice of its intention to offer other crimes evidence it also delivered to defense counsel certain written materials relating to the Blue Bucket sale.[2]

---

[2] Defense counsel described the material to the trial court:

"[I]n addition I have just this morning [been] supplied first of all with notice of intent to offer and notices respecting evidence number 13. That consists of a page author unknown that identifies evidence number 13, 1,000 pills, paid $250 April 17, 1981, suspect Noel Harshman, see attached report, see attached note from suspect. April 20, 1981 copy to D.A. I have no idea who the author of that is. But that as to that I have notes dated April 17, 1981, two pages. Also identified number 13, I have a photocopy of a document dated Friday, February 13, 'Bill I came there at 11:30 can't make it at tavern at 2:00 how bout Blue Bucket parking lot at 6.' No author. Attached to that is a photocopy of an employment division envelope, attached to that is a report dated April 22 from Dr. or Sergeant Spilker which identifies evidence number 13. On April 21, 1981 this laboratory received from Larry Fetch a sealed plastic envelope containing, this your honor is the very first time I on behalf of the defendant or the defendant has seen these documents, respecting evidence number 13."

Defendant moved to exclude the other crimes evidence because the "failure to provide discovery [was] very nearly deliberate." He also expressed a willingness "to accept a continuance, if that's the best I can do * * *." Defendant did not claim any specific prejudice that would result by reason of the claimed discovery violation. He told the trial judge that, because he had just received the material and lacked time to read it or reflect, he had no idea how it would prejudice defendant. Defendant argues that the trial court abused its discretion when it failed to exclude the evidence or to grant a continuance.

■■■ A party must disclose discoverable material "as soon as practicable" following the filing of the indictment. ORS 135.845. If a party has disclosed some material and later finds other discoverable material, "either before or during trial," then that party "must promptly notify the other party of the additional material or information." ORS 135.845(2). Sanctions may be imposed for the failure to comply. ORS 135.865 provides:

> "Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

The state argues that defendant was neither surprised nor prejudiced by the state's untimely disclosure. Defense counsel knew before trial about the Blue Bucket sale. He acknowledges he had discussed that sale with Batsell in an earlier interview. He had also discussed the sale with the prosecutor in the context of plea negotiations. Nonetheless, the fact is that the state's last minute disclosure of the material was neither "prompt" nor "as soon as practicable." The state breached its statutory duty to disclose.

■ The trial court, when faced with a breach of the duty of discovery, may choose among sanctions, which include the granting of a continuance or a refusal to admit the evidence not disclosed. ORS 135.865; *State v. Dyson,* 292 Or 26, 636 P2d 961 (1981); *State v. Wolfe,* 273 Or 518, 542 P2d 482 (1975).[3]

---

[3] *See also State v. Mai,* 294 Or 269, 280, 656 P2d 315 (1982), holding

Other crimes evidence carries with it the hazard of unfair prejudice to the defendant. The failure to timely disclose the discoverable evidence thwarts the purposes of discovery. Surprise looms large, and defense counsel is denied the opportunity to meet the evidence. The denial of a continuance to prepare for such grave evidence was actual prejudice.

Even if defendant were not substantially prejudiced by the use of the evidence, sanctions might still be appropriate.

> "[A]nother important purpose of the criminal discovery statutes is one of efficient judicial administration, i.e., to avoid unnecessary trials, to expedite trials, and to prevent the expense and delay of continuances when either party claims to be unprepared to go to trial because of failure by the other party to comply with these discovery statutes." *State v. Dyson, supra,* 292 Or at 36.

The effective administration of justice requires that discoverable evidence be provided much sooner than "moments" before trial. We hold that the trial court should have at least granted a continuance.

Because defendant is entitled to a new trial, we address his assignment of error concerning the admissibility of "other crimes" evidence. Defendant claims that it was error to admit evidence, during the state's case in chief, of the alleged sale of 800 pills on April 17, 1981, at the Blue Bucket. He argues that the relevance and probative value of this evidence is outweighed by the unfair prejudicial portrayal of defendant as "a large quantity drug-dealer."

---

"that the preclusion sanction [refusing to permit defense witness to testify] of ORS 135.865 is not inconsistent with Article I, section 11 of the Oregon Constitution, provided that the court finds that the prosecution is prejudiced by the defendant's failure to comply with the reciprocal discovery statutes, and provided further, that it appears that no sanction short of preclusion effectively will avoid the prejudice which the defendant's lack of compliance created."

The court notes in footnote 7, 294 Or at 280, that this holding limits language in *State v. Wolfe, supra,* and *State v. Dyson, supra,* insofar as the rights of a defendant are concerned.

"Because of the compulsory process clause, prejudice to the state must be shown before preclusion is appropriate. We do not suggest that prejudice to the defendant need be shown in order to preclude prosecution witnesses. *See Dyson,* 292 Or at 36."

The state contends that the evidence was relevant to prove motive and that its prejudicial impact is insignificant because of other substantial evidence of defendant's involvement in prior illegal drug activity.[4]

■    All relevant evidence is admissible unless it falls within one of the "exclusionary rules of evidence." *State v. Manrique,* 271 Or 201, 205, 531 P2d 239 (1975). As a general rule, evidence of other crimes in a criminal prosecution is excluded for the reason that its prejudical impact would outweigh its probative value. *State v. Manrique, supra,* 271 Or at 205-06. The rule is subject to various exceptions. *State v. Madison,* 290 Or 573, 580, 624 P2d 599 (1981). Common exceptions are made for showing motive, intent, the absence of mistake or accident, common scheme or plan and identity. *State v. Lehmann,* 6 Or App 600, 602, 488 P2d 1383 (1971). The list of exceptions may be limitless. McCormick, Evidence 446, § 189 (2d ed 1972).[5] The exceptions, however, do not "open wide the courtroom doors to whatever evidence may be offered in their names." *State v. Manrique, supra,* 271 Or at 210, quoting from *United States v. Goodwin,* 492 F2d 1141, 1155 (5th Cir

---

[4] For example, in the opening statement, defense counsel suggested that defendant was vulnerable to arrest because his name had previously appeared in the newspaper linking him to drug activity. Defendant did not object to Batsell's testimony that defendant had expressed reluctance to discuss the availability of drugs because of two prior arrests for narcotics, nor did he object when Batsell and his girlfriend testified that defendant had claimed to have had prior narcotic dealings in Seaside and Alaska or that he possessed "100 pounds" of the "same stuff" for sale.

[5] *See State v. Sjogren,* 39 Or App 639, 645, 593 P2d 1188 (1979), where we said that other crimes evidence was "germane to the * * * completeness of account of the crime"; that is, "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." McCormick, Evidence 448, § 190 (2d ed 1972); *see also* Annot., 93 ALR2d 1097 (1964) (evidence of other sales in narcotics prosecutions) and 92 ALR3d 545 (1979) (evidence of subsequent criminal offenses as affected by proximity of time and place). After this action was tried, OEC 404 (3) was enacted, which provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, or accident."

The 1980 commentary to the rule states:

"The list of purposes set forth in subsection (3) for which evidence of other crimes, wrongs or acts may be admitted is not meant to be exclusive."

1974). The trial judge must undertake to balance the relevance and probative value of the evidence against unfair prejudice to the defendant. *State v. Hockings,* 29 Or App 139, 144-45, 562 P2d 587 (1977).

■ ■ Evidence of the sale of 800 pills to Batsell is relevant to prove defendant's motive. The evidence is that defendant delivered the nine pills as a "sample" of the 100 pounds of drugs that he had for sale. Without evidence of the later sale, the state is left with the unexplained gift of nine pills by a hitchhiker to a paid drug informant. "[A] party cannot be required to 'sanitize' his evidence by deleting background information to the point that the evidence actually presented seems improbable or incredible to some degree." *State v. Hockings, supra,* 29 Or App at 147, quoting from *State v. Remington,* 15 Or App 170, 515 P2d 189 (1973), *rev den* (1974); See also n 5, *supra.*

The final inquiry is whether the evidence was so prejudicial that it outweighed its probative value. *State v. Manrique, supra; State v. Hockings, supra.* Defendant's claim that the evidence portrayed him as a drug-dealer is a reasonable inference to draw from the evidence. However, there was an abundance of other evidence, some of which defendant elicited himself, *see* n 4, *supra,* that would permit the jury to infer that defendant had long been active in illegal drug transactions. The Blue Bucket sale evidence did not unfairly prejudice defendant, and the trial court did not abuse its discretion when it admitted the evidence. *State v. Madison, supra; State v. Miller,* 53 Or App 493, 495, 632 P2d 493 (1981).

The remaining assignments of error do not require lengthy discussion.[6] It appears that defendant's present convictions precipitated the revocation of his probation on four earlier drug related convictions. Apart from this conviction, it is unclear from this record whether probation would have been otherwise revoked.

Reversed and remanded for a new trial and a new probation revocation hearing.

---

[6] The state concedes that the convictions for possession and delivery of the nine pills at the same time and place should be merged. *See State v. Morales,* 21 Or App 827, 22 Or App 470, 537 P2d 109, 539 P2d 1112 (1975). Because of our disposition, this assignment is moot.

**WARDEN, J.,** specially concurring.

Because I agree with the majority that the trial court erred in failing to impose sanctions for the state's failure to provide discovery as required by ORS 135.865, I concur in the decision to reverse and remand for a new trial and a new probation revocation hearing. However, I disagree with the majority's conclusion that admitting evidence of other crimes, specifically the Blue Bucket sale, was not error and, therefore, dissent from that part of the opinion.

In his first assignment, defendant contends that the trial court erred in admitting evidence of the alleged April 17 Blue Bucket drug sale. He argues that the relevance and probative value of the evidence are outweighed by its prejudicial effect in that it tended to portray defendant as a large quantity drug dealer in a case in which he was charged with possession and delivery of only nine pills.

The controlling principles are stated as follows:

"The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. * * * It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice. * * *

"For this reason it is the general rule in criminal cases that the state may not offer evidence that the defendant was guilty of other crimes in addition to the crime for which he is charged. Although evidence that a defendant has committed other crimes may have some probative value in that it may be 'more likely' that such a person committed the crime in question, it is generally recognized that the danger of unfair prejudice to the defendant outweighs any such probative value." *State v. Manrique,* 271 Or 201, 205-06, 531 P2d 239 (1975). (Citations omitted.)

The majority asserts that evidence of the April 17 sale is relevant to show defendant's motive in giving the informant the nine pills on April 13. The difficulty with that argument is that neither motive, nor intent, (the two

are often linked),[1] is an issue here. All that the prosecution needed to prove is that defendant did, in fact, knowingly hand the nine pills to the informant. His motive in doing so is immaterial — the statute is violated whether defendant delivered the pills as a present sale, in order to secure a future sale or as a gift.

It is true that proof that a defendant had a *particular* motive for committing a crime may be probative of whether he did so, especially when it would otherwise seem highly unlikely that the defendant would have committed the crime. For example, evidence of other crimes has been admitted to show motive where the defendant has been accused of murdering a member of his or her immediate family. *State v. Sack,* 210 Or 552, 300 P2d 427 (1956), *cert den* 353 US 962 (1957); *State v. Hansen,* 195 Or 169, 244 P2d 990 (1952); *State v. Hembree,* 54 Or 463, 103 P 1008 (1909); *State v. Eacret,* 40 Or App 341, 595 P2d 490, *rev den* 287 Or 409 (1979). *See also* McCormick, Evidence 450-51, § 190 at n 44 (2d ed 1972).

For many crimes, however, the motive is implicit in the act and a more specific need to show motive has been required before evidence of other crimes may be admitted. With respect to evidence of prior drug crimes, for example, we have found that evidence of a drug deal in which the defendant lost a large sum of money approximately one year before his arrest was inadmissible merely to show the defendant's need for money as a motive for the drug offenses for which he was arrested and tried. *State v. Knutson,* 45 Or App 1051, 609 P2d 922 (1980). We have found that it was error to admit evidence of a sale of marijuana to one undercover police officer in a trial on charges arising from sales to another officer, working independently of the first, merely to show defendant's knowledge that the substance was marijuana. *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971).

It is clear that the probative value of evidence of the April 17 sale to prove motive for the April 13 delivery is

---

[1] McCormick, Evidence 450-51, § 190 (2d ed 1972) states the motive exception to the general rule of exclusion as follows:

"(6) To establish motive. This in turn may serve as evidence of the identity of the doer of the crime on charge, or of deliberateness, malice, or a specific intent constituting an element of the crime." (Footnote omitted.)

minimal at best.[2] Contrary to the majority's conclusion, the subsequent sale was hardly necessary to explain the "earlier 'giveaway' of drugs between virtual strangers," which, the majority suggests, the jury would otherwise find implausible. The state put on evidence that the nine pills were a "sample" and that defendant said he had more for sale. Certainly a jury would have no trouble believing that someone would give away nine pills worth approximately $2.81[3] either in payment for the ride, in the hope of inducing a later sale or merely as an act of friendship or generosity. Evidence of the later sale has only marginal relevance to any material element of the charge.

Furthermore, other factors to be considered in the analysis weigh against its admission. Whatever relevance evidence of the later sale might have must be balanced against the prejudice caused by admitting it. Some of the factors to be weighed are:

> " '[T]he actual need for the other-crimes-evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, * * * the degree to which the jury will probably be roused by the evidence to over-mastering hostility.' McCormick, Evidence 326, 332, § 157 (1954)." *State v. Lehmann, supra,* 6 Or App at 603.

Here, whether the jury would convict defendant turned essentially on the credibility of the informant and, to a lesser extent, of his girlfriend. The informant testified (1) that defendant handed him nine pills on April 13, (2) that defendant stated that he would sell the informant more pills if the informant were satisfied with the nine, and (3) that a subsequent sale took place in another county four days later. Satisfactory proof of the first assertion is all that is needed to convict. And while motive makes it somewhat more likely that the first assertion is true, motive is equally and sufficiently demonstrated either by a *statement* of defendant that he was giving the informant

---

[2] *See State v. Manrique, supra,* 271 Or at 213. Of all the prior opinions we have examined, the facts in *Manrique* are the most closely analogous to the facts here.

[3] This figure was estimated on the basis of $250 for 800 pills.

the pills as a sample for purposes of a larger sale later or by the *fact* of a later sale. Here evidence of both was received, but because the informant's testimony to the later sale was *uncorroborated,* it did nothing to strengthen his testimony that defendant stated he would sell him more drugs if he was satisfied with the sample. That is, whether defendant is convicted depends on whether the jury believed the informant's assertion that defendant handed him the nine pills. That statement does not become significantly more believable because the same informant *also* asserts that defendant handed him 800 pills four days later. *See State v. Lehman, supra.*

In sum, evidence of the subsequent sale had little, if any, probative value and its potential for prejudice was great, because it tended to portray defendant as a large scale drug dealer in a case involving transfer of a small quantity of drugs. I do not view this error as harmless, as the majority does. The state's case was based solely on the testimony of the informant, who is not a regular police officer, and whose livelihood is dependent on conviction of persons he accuses of drug crimes, and on corroboration by his girlfriend. As the Supreme Court noted in *State v. Manrique, supra,* in holding that testimony by one undercover police officer that the defendant had sold him heroin should not have been allowed in the defendant's trial for sale of heroin to a different officer:

"As stated in *United States v. Crawford,* 438 F2d 441, 446 (8th Cir 1971):

" '* * * In today's society, possibly no act is more abhorred than the selling of narcotics. And nothing makes it more difficult for a defendant to receive a fair and unbiased trial than for the jury to think that the defendant or his acquaintances are men of bad character. * * *' " 271 Or at 212.

The evidence should not have been admitted.[4]

---

[4] The majority's finding that the evidence of the later sale was not prejudicial because defendant himself introduced evidence of his prior drug dealings "for apparent tactical reasons" is answered by observing that those tactics may have been dictated by the fact that he had been informed by the trial court that evidence of the subsequent sale would be admitted. *See State v. Manrique, supra,* 271 Or at 213.