Argued and submitted October 5, affirmed December 15, 1999

## STATE OF OREGON,
### *Respondent,*

*v.*

## MARCALENA DIANE DUPREE,
### *Appellant.*

## (97-06-34722; CA A102715)

992 P2d 472

Samuel C. Kauffman argued the cause for appellant. With him on the brief was Janet Lee Hoffman.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant was convicted, after a jury trial, of 12 counts of promoting prostitution and conspiracy to promote prostitution. ORS 167.012; ORS 161.450. She makes several assignments of error, including that the trial court erred when it denied her motion to dismiss all charges against her based on outrageous misconduct by the police. We affirm.

Defendant owned and operated escort services in Portland. In 1995, the Portland Police Vice Unit began to investigate defendant's business activities. Portland police officers are subject to rules prohibiting them from disrobing or engaging in any sexual contact in the course of an investigation. Because of that restriction, the police vice unit used paid informants to pose as clients of defendant's businesses. On four separate occasions between 1995 and 1997, informants called defendant's businesses, requesting that an escort be sent to a hotel room to perform a massage. When the escorts arrived, the informants negotiated sexual favors for an additional fee. Unbeknownst to the escorts, police officers videotaped the ensuing sexual encounters.

Based on the evidence uncovered by the investigation, the police obtained search warrants for defendant's home (from which she ran her businesses), bank accounts, and safe deposit boxes. On June 3, 1997, police executed the warrant on defendant's home. The next day, while executing the warrant on one of defendant's bank accounts, the officers encountered defendant, who apparently was attempting to withdraw funds from her account before they arrived. Defendant's car broke down at the bank, and Officer Brumfield gave defendant a ride home. During that trip, defendant offered to supply police with information about other escort services in exchange for leniency. Brumfield told defendant that, because she had previously invoked her right to counsel, he could not discuss the case with her.

Defendant was eventually charged with 12 counts of promoting prostitution and conspiracy to promote prostitution. The indictment alleged that defendant knew that her escorts were engaged in prostitution, and that the escort

services were a front for the prostitution operation. Defendant made a pretrial motion to dismiss the indictment in its entirety, in which she argued that the police use of paid informants to engage in criminal activity amounted to outrageous conduct justifying dismissal of the charges against her. The trial court denied the motion.

At trial, the prosecutor asked Brumfield if defendant had made any statements to him as he was driving her home from the bank. In response, Brumfield related defendant's offer to become a police informant against other escort services in exchange for favorable treatment. In further response to the same question, Brumfield also testified that he explained to defendant that he could not discuss her case because she had previously invoked her right to counsel. Defendant's attorney then moved for a mistrial, based on Brumfield's testimony about defendant's previous invocation. The trial court denied that motion but ruled that no further mention of defendant's invocation could be made.

Defendant later testified on her own behalf. On direct examination, defendant testified that she did not know that her employees were engaged in prostitution, that she attempted to run her businesses lawfully, and that she did not intend to promote prostitution. On cross-examination, the prosecutor asked defendant whether she had told police in 1994 that it was possible that her codefendant, Tara Nute, was working as a prostitute. The basis for the question was a police report filed following an incident in which Nute, while working for defendant, had gone to a hotel room to dance for a client. Defendant had claimed that the client attempted to rape Nute. When the police arrived at the scene, an officer asked defendant whether "it was possible Nute was in the process of exchanging sexual favors for money when things went bad." Defendant said it was "possible," but unlikely. The prosecutor sought only to introduce evidence of defendant's statement, rather than of the entire incident as described in the report. The prosecutor argued that the statement tended to show that defendant *did* have notice that her escorts might be committing acts of prostitution. Defendant countered that the state had committed a discovery violation

by waiting until trial to reveal the report and asked for a continuance to consider it. The trial court found that the prosecutor was candid when he claimed to have had no knowledge of the report prior to trial. The court denied defendant's motion, instead granted a 20-minute recess. After the recess, defendant objected to the state's use of the statement and requested a further continuance. The court overruled the objection and admitted defendant's statement into evidence. The court also denied the request for a further continuance. At the conclusion of trial, defendant was convicted of 10 counts of promoting prostitution and two counts of conspiring to promote prostitution.

On appeal, defendant makes five assignments of error. She first argues that the trial court erred when it denied her motion for a mistrial following Brumfield's testimony that referred to her previous invocation of the right to counsel. Among other responses, the state counters that the trial court acted properly, because the testimony was not prejudicial.

We review the trial court's decision to deny a motion for mistrial for abuse of discretion. *State v. Pratt*, 316 Or 561, 574, 853 P2d 827, *cert den sub nom Pratt v. Oregon*, 510 US 969 (1993). We agree that it is improper to admit evidence that a defendant invoked his or her constitutional rights. *State v. Larson*, 325 Or 15, 23, 933 P2d 958 (1997). However, such an impropriety rises to the level of reversible error only if the context in which the evidence is offered makes it likely that the jury will draw a prejudicial inference. *Id.* at 24. "It is our duty to inquire whether it was likely" that the jury would draw such an inference. *Id.* at 23; *State v. Smallwood*, 277 Or 503, 506, 561 P2d 600, *cert den sub nom Smallwood v. Oregon*, 434 US 849 (1977). If the impermissible inference is unlikely, then the error is harmless. *State v. Williams*, 49 Or App 893, 896-97, 621 P2d 621 (1980) (state's reference to defendant's invocation of constitutional rights was harmless in the course of relating conversation between defendant and police officer, in which officer said, "[Y]ou said that you wanted to talk to your attorney first and I don't want to talk to you about the incident.") (emphasis omitted).

■ Under the circumstances presented here, we conclude that a prejudicial inference was highly unlikely and that any error was harmless. The information was disclosed incidentally to Brumfield's testimony about defendant's offer to incriminate other escort services and explained why he did not pursue her offer to cooperate at that time. There was a single reference that was not responsive to the question asked. The state did not deliberately engineer a situation in which the jury was told that defendant invoked her rights after being asked a question about the crime. *See State v. White*, 303 Or 333, 736 P2d 552 (1987) (mistrial required where state deliberately drew attention to defendant's refusal to testify at codefendant's trial). At worst, the jury might have inferred that defendant was unwise to volunteer incriminating information to Brumfield despite her previous invocation. We agree with the state that the context of the reference made it highly unlikely that the testimony created any adverse inference about defendant's invocation in the jury's deliberations. *See Smallwood*, 277 Or at 505-06 (a contemporary jury is sufficiently aware of the value of legal counsel not to draw tenuous adverse inferences from a reference to invocation). After full consideration of the record, we conclude that the trial court acted within its discretion when it denied defendant's motion for mistrial.

■ Defendant next argues that the trial court erred when it denied her motion for a continuance in order to prepare for the prior act evidence contained in the 1994 police report—namely, her statement to the police officer that it was "possible" Nute was engaged in prostitution, but she "didn't think so." The state responds that the trial court acted within its discretion when it denied the continuance.

■ We are bound by the trial court's factual findings in support of its discovery ruling, provided that they are supported by evidence in the record. *State v. Lindquist*, 141 Or App 84, 87, 917 P2d 510 (1996). Whether those facts add up to a violation of the state's discovery obligation is a question of law. *Id.* at 88. The relevant statutes require the prosecutor to disclose "[a]ny written or recorded statements or memoranda of any oral statements made by the defendant" and that he or she do so "as soon as practicable." ORS 135.815(2); ORS 135.845(1). If the state learns of new evidence during

trial, then it must "promptly" notify defendant. ORS 135.845(2).[1]

Here, the prosecutor received the report and turned it over to defendant in the middle of trial. Defendant argues that the prosecutor "presumably" knew the report existed earlier and "ambushed" her in the middle of trial. However, the prosecutor represented to the trial court that he had not known of the report earlier. The trial court accepted that representation as true, a finding that we accept. Thus, the prosecutor *did* disclose the police report "promptly." Consequently, the trial court correctly determined that there was no discovery violation.

■ Defendant cites *State v. Harshman*, 61 Or App 711, 658 P2d 1173 (1983), for the proposition that a new trial is required when the state produces new evidence during trial, the trial court does not grant a continuance, and prejudice results. Her reliance on *Harshman* is misplaced, because the prejudice analysis differs considerably in this case. The newly discovered evidence in *Harshman* related to the defendant's other *crimes*, which is why we concluded that actual prejudice resulted from defense counsel's inability to prepare. The circumstances here are materially different. The evidence in question involved a mere statement by defendant, offered to show her notice of her employees' activities but which was also susceptible to interpretation as a denial that she knew of any illegal activity. Defendant has not shown that her ability to respond to that evidence was prejudiced by the denial of an extended continuance of the trial. The trial court did not abuse its discretion.

■ ■ Defendant next assigns error to the trial court's denial of her motion to exclude evidence of her 1994 statement to the police. She argues that the evidence was improperly admitted to show her alleged propensity to commit crimes involving prostitution. We review the trial court's relevance determination for errors of law. *State v. McHenry*, 161

---

[1] ORS 135.845(2) provides:

"If, after complying with the provisions of ORS 135.805 to [ORS] 135.873, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, the party must promptly notify the other party of the additional material or information."

Or App 606, 611, 985 P2d 873 (1999). If the prior act evidence was relevant, then it was admissible, as long as admitting it was not unconstitutional or in violation of certain statutes not at issue here. OEC 404(4). As defendant claims no constitutional error, we limit our review to the relevancy issue.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. OEC 401 establishes a " 'very low threshold' for the admission of evidence; evidence is relevant so long as it increases or decreases, *even slightly*, the probability of the existence of a fact that is of consequence to the determination of the action." *State v. Barone*, 329 Or 210, 238, 986 P2d 5 (1999) (emphasis added).

The parties agree that the trial court appropriately analyzed the question of admissibility under OEC 404(3), which authorizes the admission of evidence of uncharged misconduct under specified circumstances.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)

The trial court determined that the evidence was relevant to show that defendant had notice that her employees were engaged in prostitution. We agree. Defendant testified that she had no knowledge that her employees were engaged in prostitution. The statement that Nute's involvement in prostitution was "possible" reasonably permitted the inference that, in fact, defendant did know that at least one of her employees was engaged in prostitution. The evidence was not offered to show defendant's character but, instead, was offered to show her state of mind. *See State v. Louis*, 296 Or 57, 62, 672 P2d 708 (1983). The fact that, as we have noted, a different inference could also reasonably have been drawn, did not require the trial court to exclude evidence of defendant's statement. *State v. Titus*, 328 Or 475, 481, 982 P2d

1133 (1999). The trial court did not err in admitting evidence of defendant's statement.

Defendant next assigns error to the trial court's denial of her motion to dismiss based on outrageous conduct by the police during the investigation. Defendant argues that the police sanctioning of criminal conduct by informants denied her due process under the Fifth Amendment to the United States Constitution and her right to trial by an impartial jury under Article I, section 11, of the Oregon Constitution. The state responds that defendant did not preserve those arguments and that she did not prove that the investigation was conducted in an outrageous manner.

■ The principles of fundamental fairness underlying the federal right to due process and Oregon's right to trial by impartial jury are so similar that "it is not clear whether and how the analysis * * * might differ." *State v. Amini*, 154 Or App 589, 594, 963 P2d 65, *rev allowed* 327 Or 620 (1998). We ordinarily address state constitutional questions first. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). In this case, however, defendant's Oregon constitutional argument simply asks us to find a state constitutional violation if a federal constitutional violation exists.[2] Therefore, we begin and, for the reasons that follow, end our analysis with the federal constitutional inquiry.

Defendant first urges that the police investigation was egregious because it was not necessary that the informants consummate criminal acts in order to prove the charges ultimately made. ORS 167.007(1). Federal case law on this issue is in conflict, but there is authority for the proposition that government "overinvolvement" in a crime may rise to the level of outrageousness when it engineers and directs the enterprise and when it generates new crimes solely for the

---

[2] Perhaps the reason defendant urges us to view her state constitutional claim in light of federal law is that there is no authority for the proposition that outrageous governmental conduct violates the impartial jury guarantee of Article I, section 11. *See State v. Huffman*, 65 Or App 594, 598-600, 672 P2d 1351 (1983) (rejecting argument that outrageous governmental conduct violated compulsory process guarantee of Article I, section 11); *State v. McArdle / Harrelson*, 91 Or App 248, 253 n 3, 754 P2d 918, *rev den* 306 Or 528 (1988) (rejecting argument that outrageous governmental conduct violated the "due course of law" guarantee of Article I, section 10).

purpose of charging the defendant. *United States v. Bogart*, 783 F2d 1428, 1434 n 5, *vacated in part on other grounds sub nom Wingender*, 790 F2d 802 (9th Cir 1986). *See also United States v. Lacey*, 86 F3d 956, 964 (10th Cir), *cert den sub nom Lacey v. United States*, 519 US 944 (1996) ("[T]here is a point at which excessive government zeal may warrant judicial intervention. However, prior to that point, the courts will not fine tune conduct of law enforcement officials that does not offend the universal sense of justice.") (citation omitted); *United States v. Nolan-Cooper*, 155 F3d 221, 229 (3rd Cir 1998) (recognizing continuing viability of outrageous governmental conduct defense). *But see United States v. Gaviria*, 116 F3d 1498, 1534 (DC Cir 1997), *cert den sub nom Naranjo v. United States*, 522 US 1082 (1998), *Williams v. United States*, 522 US 1082 (1998), *Zambrano v. United States*, 522 US 1132 (1998) (outrageous governmental conduct defense limited to "conduct involving coercion, violence, or brutality to the person") (citation omitted).

■ However, as the state correctly points out, defendant did not preserve this argument for appeal. We have reviewed the record and agree that defendant did not raise the issue of government "overinvolvement" in the crime, identify the source for her position, or make this particular argument to the trial court. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). We therefore decline to consider whether the government's conduct in this case warrants dismissal.

■■ In addition, defendant argues that the government's conduct was outrageous because it further victimized the victims of the crime of promoting prostitution—the prostitutes. *State v. Wilson*, 111 Or App 147, 152, 826 P2d 1010 (1992) (referring to prostitute as victim of defendant convicted of promotion). However, even if the doctrine were otherwise applicable, in order to warrant dismissal based on outrageous governmental conduct, that conduct must *directly* affect the defendant. *Bogart*, 783 F2d at 1429 (affirming convictions of two defendants "because they do not have standing" to challenge outrageous governmental conduct directed at codefendant); *United States v. Pedraza*, 27 F3d 1515, 1522 (10th Cir), *cert den sub nom Pedraza v. United States*, 513 US 941 (1994), *Irelan v. United States*, 513 US 1004 (1994), *Pedraza v. United States*, 513 US 1004 (1994) ("A defendant

may not assert an outrageous [governmental] conduct claim based on conduct that harms third parties."). Because defendant was not herself charged with acts of prostitution, she was not the victim of the government's conduct. That is not to say that we condone the government's conduct in this case. Nevertheless, that conduct did not victimize defendant: the informants' conduct affected her only in that it tended to prove what she denied—that her escort services were a front for prostitution. Accordingly, we conclude that, notwithstanding the unseemly pact the police made with their informants, defendant was not entitled to dismissal of the charges against her.

Defendant's final assignment of error contends that the trial court erroneously denied her motion for a judgment of acquittal based on an alleged lack of evidence from which the jury could have inferred that defendant intended to promote and conspire to promote prostitution. That claim is without merit. The trial record reveals ample evidence, most notably extensive testimony by one of defendant's former employees, from which the jury could have inferred that defendant intended to commit the charged offenses.

Affirmed.