Argued and submitted June 6, 2002, affirmed March 6, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# PAMELA JOAN HUG,
*Appellant.*

## 0006648C; A114040

64 P3d 1173

Lawrence Matasar argued the cause and filed the briefs for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

DEITS, C. J.

Armstrong, J., dissenting.

---

* Deits, C. J., *vice* Warren, S. J.

## DEITS, C. J.

Defendant appeals a judgment of conviction for contempt. ORS 33.065. She raises four assignments of error, only one of which requires discussion. We affirm.

Defendant was charged with contempt for disobeying an order of the Malheur County Circuit Court that directed her to cooperate with the Oregon Youth Authority concerning the treatment of her son. She was charged by information in June 2000. By the time of her arraignment in August 2000, defendant had hired attorney Douglas Rock. In September, the trial court set a "primary" trial date of December 14, with an "alternate" date of October 30. On October 10, the state filed a motion to continue the trial date because a material witness was on medical leave. The trial court granted the motion as to the "alternate" date but retained the "primary" date of December 14. In early December, defendant informed Rock that she had hired a new attorney, Anne Morrison. Rock moved for permission to withdraw, which the trial court granted by an order signed on December 13.

On December 14, the parties appeared for trial. The state moved orally for a continuance because a subpoenaed witness had not appeared. The trial court, over defendant's objection, granted a continuance and set February 16, 2001, as the new trial date. On January 24, defendant moved to dismiss. The trial court heard the motion to dismiss on February 12 and signed an order denying that motion the same day. On February 13, defendant moved to continue the trial date, and on February 14 Morrison moved to withdraw as defendant's attorney on the ground that she had been discharged.[1] Morrison cited Disciplinary Rule (DR) 2-110(B) in support of her motion.[2] On February 14, two days before the date set for trial, the trial court heard both motions. The court granted Morrison's motion to withdraw but denied defendant's motion for a continuance.

---

[1] Those motions were both filed on February 15, but it is clear that the trial court had both motions before it on February 14. Accordingly, we refer to the dates on which Morrison signed the motions.

[2] The relevant portion of DR 2-110(B) is set out below. 186 Or App at 575-76.

On February 16, the parties appeared for trial. Defendant, appearing *pro se*, renewed her request for a continuance. After questioning both defendant and the district attorney, the trial court initially decided to reverse its ruling and grant a continuance, but, after the state argued that one of its witnesses had gone to great expense and inconvenience to travel to court that day, the trial court denied the continuance and proceeded to trial. Defendant was convicted and now appeals.

■ In her second assignment of error, defendant argues that the trial court erred in denying her a continuance. According to defendant, she had little opportunity to hire substitute counsel and her *pro se* status on the date of her trial was not her fault. Defendant acknowledges that she and Morrison "had a disagreement over the handling of the case," but she contends, in essence, that she did not discharge Morrison. Rather, defendant alleges that she and Morrison mutually decided that Morrison should not continue to represent her. She also points to her statement at the February 14 hearing that she would rather have Morrison than no counsel at all and her statement on the first day of trial that she was representing herself "against my wishes." Defendant contends that, under those circumstances, Morrison should not have sought, nor should the trial court have granted, permission to withdraw; in any event, according to defendant, the trial court abused its discretion in refusing her a continuance.

■■ We review rulings on motions for continuance for abuse of discretion. *State v. Wolfer*, 241 Or 15, 17, 403 P2d 715 (1965); *State v. Dupree*, 164 Or App 413, 418-19, 992 P2d 472 (1999), *rev den*, 330 Or 661 (2000). "Discretion" refers to the authority of a trial court to choose among several legally correct outcomes. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." *Id.*

■ When assessing a request for continuance to obtain new counsel, a trial court must balance a defendant's right to choice of counsel against the need of the public and of all

defendants for expedition in the court system. *State v. Pflieger*, 15 Or App 383, 387, 515 P2d 1348 (1973), *rev den* (1974); *see also State v. Lingren*, 79 Or App 324, 327, 719 P2d 61 (1986) (right to counsel must be balanced against the state's need to conclude the case in a timely manner). As the United States Supreme Court has stated, "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 US 575, 589, 84 S Ct 841, 11 L Ed 2d 921 (1964).

We have generally affirmed denials of last-minute requests for continuances to seek new counsel where it appeared that the defendants were in need of new counsel at a late hour due to their own action or inaction. *E.g., State v. Makinson*, 174 Or App 544, 548, 27 P3d 1046, *rev den*, 332 Or 559 (2001); *State v. Spry*, 166 Or App 26, 30, 999 P2d 485, *rev den*, 331 Or 244 (2000); *State v. Brenner*, 151 Or App 159, 167, 947 P2d 1139 (1997); *State v. Keerins*, 145 Or App 491, 495, 932 P2d 65 (1996).

■ In this case, contrary to defendant's assertion, the trial court found that defendant had discharged her second attorney. That finding is supported by the record and is binding on this court. *See Ball v. Gladden*, 250 Or 485, 486-87, 443 P2d 621 (1968). As the trial court found, defendant discharged her second attorney three days before trial after having been advised by her attorney that, if defendant did discharge her, defendant might nonetheless be required to go to trial as scheduled. Consequently, her appearance at trial without counsel was of her own doing and supported the trial court's denial of a continuance.

The transcript of the hearing on Morrison's motion to withdraw and defendant's motion for a continuance includes the following:

"MS. MORRISON: I just wanted to make it clear for the record that I had a long speaker phone conference and my [employer] had a long speaker phone conference with [defendant] yesterday. We explained to her the possible consequences of my leaving the case at such a late date. We

specifically said that she might be forced to proceed on Friday, and that she might be forced to proceed without counsel. And [defendant] is saying now that after that conversation I withdrew. The reality is that after that * * * discussion with [defendant] she told me that she wanted me off the case anyhow and that she wanted me to go ahead and file the motion to withdraw, which I proceeded to do. And my position at this point is that I have already been discharged by [defendant]. Under the circumstances, I would object to being put back on to the case if we're required to go forward.

"[DEFENDANT]: If I might speak, too. In that same conversation Ms. Morrison's employer read a note or spoke to me about a note that Ms. Morrison passed to him during the telephone conference saying that she wasn't comfortable representing me on Friday either. And so my interpretation of the meeting was that it was a combination of the two. It wasn't just one or the other, it was both. That she didn't feel comfortable representing me either.

"THE COURT: Well let me just ask you: Do you want Ms. Morrison to represent you?

"[DEFENDANT]: Well, I don't want to have no counsel and I suppose if I'm given the choice of no counsel at all or Ms. Morrison, since I'm not a legal expert I would have to have somebody here because I don't have the legal expertise with which to represent myself, and I am not able to do that. So I guess if it's a choice of nothing or Ms. Morrison, then I have no choice but to have Ms. Morrison represent me (INAUDIBLE).

"THE COURT: Did you discharge her yesterday?

"[DEFENDANT]: Uh ...

"THE COURT: Did you tell her to file the motion to withdraw?

"[DEFENDANT]: I told her to go ahead after our conversation—after our conversation in which she indicated that she wasn't comfortable representing me either. Then at that point—after—at that point the conversation— that's—that's basically what happened.

"THE COURT: So when you say she wasn't comfortable representing you * * * by that point you had already told her you didn't want her to represent you any more?

"[DEFENDANT]: I had talked to her ...

"THE COURT: But you said she didn't feel comfortable either, is that what I understand?

"[DEFENDANT]: What I had said in the conversation (INAUDIBLE) when I started out the conversation I just explained that I was very uncomfortable with having her represent me, that I had huge questions about how my case was being handled and that I was very concerned; and I outlined those concerns and it's—I spoke both with Ms. Morrison and her employer last Thursday as well and expressed my concerns. At that point I said that I'd really— I tried (INAUDIBLE) I don't remember exactly what I said but I didn't discharge her, but I was extremely uncomfortable at that point. And I expressed those concerns and we had talked about the possibility of discharging her but I didn't at that time.

"THE COURT: Ms. Morrison, were you discharged?

"MS. MORRISON: I was discharged. She was very straightforward that she wanted me off the case. She was very direct. If there is an issue about it, my employer Mr. Ricker is here today—he went to the office yesterday and participated in the conversation, and I don't doubt that (INAUDIBLE) conference if you would like to hear his impression * * *."

The trial court then read into the record portions of Morrison's affidavit in support of her motion to withdraw, in which Morrison stated that defendant had told her that defendant did not want Morrison to represent her at trial. The trial court then stated:

"What I'm going to do is, at this point, I believe that [defendant] maybe did discharge Ms. Morrison and pursuant to DR 2-110(B)(4) I am going to grant that withdrawal."

Defendant contends that the trial court made no factual finding about whether she had discharged Morrison, pointing to the trial court's use of the word "maybe." However, in context of the entire sentence, it is clear that the trial court did find that defendant had discharged Morrison. Disciplinary Rule 2-110(B) provides, in part:

"A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment * * * if:

"* * * * *

"(4) The lawyer is discharged by the lawyer's client."

Given the terms of that rule and the trial court's ultimate conclusion, the court necessarily found that defendant had discharged Morrison. *See Ball*, 250 Or at 487.

With that finding of fact, this case presents the following situation: Defendant discharged her second attorney three days before trial.[3] Although the discharge of her first attorney did not lead to a request for a continuance, defendant had discharged her first attorney only days before the first trial date. Both decisions to discharge her attorneys were within defendant's control. In addition, defendant had a reasonable amount of time, approximately two months, to retain an attorney of her choice before the second trial date. Finally, as noted above, according to Morrison's testimony, which the trial court apparently found credible, both Morrison and her employer had advised defendant that she might be forced to go to trial without an attorney before defendant made the decision to discharge Morrison. Because defendant put herself in the position of asking the court to continue the trial so she could seek a third attorney, the trial court was within its discretion in denying a continuance. *See Brenner*, 151 Or App at 167.

■ The trial court's decision to deny a continuance might not have been the *only* legally correct choice, but it was *a* legally correct choice. On review for abuse of discretion, we may not substitute our judgment for that of the trial court simply because we might have resolved the issue differently. *See State v. Deloge*, 55 Or App 742, 744, 639 P2d 1293 (1982).

Affirmed.

---

[3] The meeting during which defendant discharged Morrison happened the day after the trial court denied defendant's motion to dismiss, which Morrison had written and argued.

**ARMSTRONG, J.,** dissenting.

The majority concludes that the trial court did not abuse its discretion in denying defendant's motion to continue the trial in her case so that she could be represented by an attorney at trial. The court denied the continuance because the state objected that continuing the trial would inconvenience one of its witnesses who had traveled a long way to testify. I believe that the balance that the court struck between requiring defendant to be unrepresented at trial and imposing on a state witness was outside the range of permissible discretion. I therefore dissent from the majority's decision to affirm the trial court's denial of defendant's motion. I agree, however, with its disposition of defendant's other assignments of error.

The state sought and received two continuances of the trial in this case. It received the second continuance when a subpoenaed witness failed to appear at trial. Defendant had changed attorneys just before the trial date, but she was prepared to try the case and objected to the continuance:

> "This case has been pending since June 27th of this year and for the D.A. to only realize yesterday that they had a problem with their subpoena is to realize it at a very late date. My client has already been through a lot of time, and trouble and expense as a result of this case. I've come down from La Grande today in order to represent her here today and our position is that if they can't produce their witness [then] this case should go forward or should be dismissed if they cannot complete their case without their witness."

Just before the next trial date, defendant and her attorney had a falling out that led her attorney to believe that she had been discharged. The attorney promptly filed motions to withdraw as defendant's attorney and to continue the trial. At the hearing on the motions, the court determined that defendant had discharged her attorney, so it granted the motion to withdraw. However, the court denied defendant's motion to continue the trial. The court did so on the mistaken understanding that defendant had received a continuance when she had changed attorneys on the eve of the preceding trial date. It also did so even though defendant made clear that she could not represent herself and that she wanted to

rehire her attorney (an alternative to which her former attorney objected) if the court did not grant the continuance.

Defendant renewed her motion for a continuance when she appeared two days later for trial. The court decided at that point to grant the motion because it realized that it had been mistaken about the circumstances of the prior continuance:

"THE COURT: [W]hen I was making my decision on Friday, looking at the register, it appeared to me as I stated and I think you all understand what I stated, it had appeared to me that when Mr. Rock had withdrawn the continuance was granted at your [defendant's] request. And I felt that you had received a continuance once.

"[DEFENDANT]: Oh.

"THE COURT: And my concern was that you had received a continuance one time, [now] we're ready for trial and suddenly you're changing [a]ttorneys again and—and I was not going to allow that to occur. But, Ms. Mowder, basically the way I'm looking at this is the State's had two continuances. [Defendant], though she had requested one— apparently verbally because I have no copy in my file of a continuance from Ms. Morrison, I do not see a continuance asked for before this very last one. Okay? And I didn't have that file when I made my decision, what, two days ago, three days ago. I'm going to go ahead and continue this. I'm going to ask that it be set right away. I'll be glad to come back and try the case. I'm sorry for the delay, but it's happened before at the request of the State. I do believe that [defendant] needs to be able to be entitled to have a continuance at this point because she has not had one before."

The court ultimately denied defendant's motion, however, when the state objected that one of its witnesses had expended significant time and money to appear at trial.

In upholding the trial court's decision, the majority focuses on the fact that defendant twice changed attorneys on the eve of trial and that she did so the second time after being advised by her attorney that the court might deny her a continuance and require her to appear unrepresented at trial. It also says that she had two months between the two trial settings to hire an attorney with whom she was satisfied.

As to the last point, the disagreement between defendant and her last attorney arose *after* the court had denied defendant's motion to dismiss the contempt charge on which defendant was to be tried, which occurred four days before trial. There is no reason to believe that defendant had any reason to be dissatisfied with her attorney before that time. Furthermore, no one told the court anything about the disagreement, so the court had no basis on which to evaluate defendant's role in it.

The majority's other points also provide no support for its position. Defendant had changed attorneys on the eve of a previous trial setting, but that change was *not* part of a stratagem to delay or avoid trial. She was prepared to try the case at that point and opposed the state's motion to continue it. Her last attorney did warn her that the court might deny her a continuance and require her to represent herself at trial, but that warning has no bearing on whether the court *should* have granted the continuance, which necessarily turns on factors other than whether defendant was aware that the court could deny her motion.

At bottom, this case turns on the propriety of the choice that the court actually made, which was to require defendant to represent herself in the criminal contempt proceeding, something that defendant had made quite clear she was not qualified to do, in order to avoid requiring a state witness to incur additional time and expense to appear at a later trial. I believe that the trial court struck a balance that was outside the range of choices available to it on this record and, hence, that it abused its discretion in denying defendant's motion. I respectfully dissent from the majority's contrary conclusion.