246 P.3d 50 (2010)
240 Or. App. 305
STATE of Oregon, Plaintiff-Respondent,
v.
Daniel Ray GALE, Defendant-Appellant.
C071918CR; A140156.
Court of Appeals of Oregon.
Argued and Submitted September 20, 2010.
Decided December 29, 2010.
*51 Bronson D. James, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.
Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before BREWER, Chief Judge, and EDMONDS, Senior Judge.
EDMONDS, S.J.
Defendant appeals judgments of conviction for unlawful manufacture of marijuana, ORS 475.856; unlawful delivery of marijuana, ORS 475.860; unlawful possession of marijuana, ORS 475.864; child neglect in the first degree, ORS 163.547; and endangering the welfare of a minor, ORS 163.575. On appeal, he assigns as error the denial of his motion to continue the trial of the above charges. We reverse and remand.
Defendant was indicted on the above charges on July 27, 2007, in Washington County.[1] Defendant retained counsel to represent him with regard to the charges and appeared on September 12, 2007, at which time he pleaded not guilty. After a pretrial conference was held on September 24, the court set trial on the indictment for November 14, 2007. On November 7, 2007, defendant moved for a continuance of the November 14 trial date on the ground that defense counsel was not prepared to proceed at that time. The trial court granted defendant's motion, but did not immediately reschedule the case for trial. On February 11, 2008, the court rescheduled trial to commence on May 20, 2008. However, defendant's retained counsel moved to withdraw as his attorney on May 6, 2008, and the court allowed counsel to withdraw on May 16. At the same time, the court also rescheduled trial for July 15, 2008, and set a pretrial conference for July 11, 2008.
On May 20, 2008, a different attorney notified the court that he would be representing defendant on the charges. On May 28, 2008, that attorney moved for a continuance of the July 15 trial date on the ground that the date conflicted with the trial of an older case that he was trying in another county. The motion was heard on the same date by the court; the court denied the motion but suggested that it would be willing to reconsider the motion in the event that counsel and the prosecutor could come up with dates "that are agreeable to everybody."
On June 10, 2008, defendant again moved for a continuance of the July 15 trial date, based on the conflict with the case in the other county. The court denied defendant's motion on June 12, 2008. Defense counsel then withdrew as counsel of record on June 24, 2008.[2]
Defendant appeared for trial on July 15 without counsel. The court inquired of defendant after learning from the prosecutor that defendant desired a continuance of the trial date in order to retain new counsel. Defendant explained to the court that his first attorney resigned due to a dispute about the amount of fees being charged. According to defendant, that attorney was "double charging me for trial," and there was "$3,800 worth of discrepancies" in the charges. Defendant had retained his new counsel on the Monday after his initial counsel was allowed to withdraw by court order. According to defendant, his new lawyer told him that "on *52 the 15th[,] I can't do it, but there should be no reason for why we can't get a postponement."
Defendant explained that he was present at the hearing on his new counsel's motion to continue the July 15 trial date when the court denied his motion to continue the trial but indicated that it was willing to consider rescheduling the trial date if the parties could agree on a new date. Defendant stated to the court:
"So, I don't know what happened with [defense counsel] contacting everybody to come up with a new date. I'm not really sure on that. He said that he tried, but there was no debate. There was no there was no leniency on a postponement. He tried again."
Defendant recounted that, approximately a week later, he was told by his new counsel that counsel "was going to have to file a motion to withdraw because there is no way he can make it here without beingyou know, because of his prior client." However, defendant claimed that, unlike when his first attorney had withdrawn, he had received "no paperwork" in the mail notifying him that his counsel had withdrawn as a matter of record until the Friday before his trial date.
Defendant ended his explanation of his circumstances to the court with the following statement:
"So I had no idea that my attorney was able to withdraw until Friday and then being the weekend and then tomorrow you know, yesterday was Monday. I live in Central Oregon. I had to come in here. I haven't had time to even try to get another attorney.
"And from what I'm understanding from my firstI mean, my second attorney, nobody's going to touch this case withwith only three or four days to prepare. There's over a thousandfrom what I'm understandingthere's over a thousand pages of discovery, and I don't even have all the discovery."
The trial court denied defendant's motion to continue the July 15 trial date so that he could obtain new counsel, and defendant proceeded to trial without counsel, resulting in the convictions that are on appeal. The court ruled that "the State would be prejudiced by a reset." The court explained that this was the third trial setting, which provided the opportunity for what the court characterized as "witness fatigue." The court amplified its explanation:
"I like that term, because that's what happens when people, basically, are at a point where they are decided maybe that they just won't show up the next time and that's how they will state their dissatisfaction. So, I think it does end up with a prejudice to the State."
As to defendant's circumstances, the court pointed out that defendant knew on June 24 from a conversation with his second counsel that that counsel was withdrawing and had been unable to obtain a continuance of the July 15 trial date. It concluded that, under the circumstances, defendant should have anticipated the need to retain new counsel and not waited until receiving formal notice of his counsel's withdrawal.
On appeal, defendant argues that the court exceeded its discretion when it denied his motion to continue the trial. He points out that the state offered no evidence that any witnesses would become unavailable if the trial were delayed.[3] In his view, the court erroneously required him to predict a ruling on his new counsel's second motion to withdraw when he was reasonably entitled to written notice that withdrawal had been permitted by the court. Defendant concludes that he was "caught in a situation not of his own making, [and] was forced to [bear] the consequences of two competing trial courts who could not agree to accommodate each other."
The state disagrees. In its view,
"the record reveal[s] that defendant had known at least two months before the scheduled trial date that the court was *53 unwilling to reset the date to accommodate defendant's then-attorney's schedule. Moreover, at least three weeks before the scheduled trial date, the court again ruled that it would not reset the trial date and defendant's then-attorney told defendant that he would have to withdraw as counsel for defendant because he would be unavailable for trial. Even though defendant knew he had a `set in stone' trial date at which his attorney would not be available, he failed to act upon that knowledge at that time and procure new representation."
In deciding the issue framed by the parties, we consider first the proper standard of review to be applied to the analysis. A motion for a continuance of a trial date is addressed to the sound discretion of the trial court, and a reviewing court will only reverse such a ruling in the event that the court has exceeded the boundaries that define its discretion. State v. Wolfer, 241 Or. 15, 17, 403 P.2d 715 (1965). That standard expresses deference by a reviewing court to a trial court's ruling on a motion of continuance because of the familiarity of the trial court with all of the circumstances surrounding the making of such a motion and the consequences of granting it. The Oregon Supreme Court has since explained that the term "discretion" refers to the authority of a trial court to choose among several legally correct outcomes. State v. Rogers, 330 Or. 282, 312, 4 P.3d 1261 (2000) (applying the term "discretion" to rulings regarding the admissibility of evidence). A court exceeds its discretion only when its ruling is outside the purview of permissible legal choices. For example, in State v. Hug, 186 Or.App. 569, 572-73, 64 P.3d 1173, rev. den., 335 Or. 510, 73 P.3d 292 (2003), we applied the Rogers definition of "discretion" and affirmed the trial court's decision to deny a motion for continuance, concluding that the trial court's ruling might not have been the only legally correct choice but, regardless, we could not properly substitute our judgment for that of the trial court simply because we might have resolved the issue differently. 186 Or.App. at 576, 64 P.3d 1173.
Thus, we implicitly recognized in Hug that, in the abstract, there may be some cases in which either the denial or the allowance of a motion for continuance is a permissible legal choice. We summarized in Hug the test as to whether a court's ruling on a motion for continuance is a permissible legal choice:
"When assessing a request for continuance to obtain new counsel, a trial court must balance a defendant's right to choice of counsel against the need of the public and of all defendants for expedition in the court system. State v. Pflieger, 15 Or.App. 383, 387, 515 P.2d 1348 (1973), rev. den. (1974); see also State v. Lingren, 79 Or. App. 324, 327, 719 P.2d 61 (1986) (right to counsel must be balanced against the state's need to conclude the case in a timely manner). As the United States Supreme Court has stated, `There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)."
186 Or.App. at 572-73, 64 P.3d 1173.
We turn to the circumstances of this case and apply the above test. Although we are sensitive to the needs of witnesses whose lives could be significantly disrupted by repetitive appearances in court, the record before us lacks any factual information that there would have been witnesses who would have been unavailable to the state if the continuance had been granted. "Witness fatigue" under some circumstances may be a proper consideration, but ultimately the test contemplates whether the state's need to conclude the case in a timely manner is affected. In this case, the record, based only on counsel's generalization, was insufficient for the trial court to have concluded that the state would have been prejudiced by a grant of defendant's motion.
On the other hand, the effect on defendant in requiring him to go to trial without counsel was significant. If convicted, defendant faced the potential of a substantial deprivation of his liberty. Moreover, the case was a complex case involving multiple charges and *54 a codefendant. Indeed, defendant's trial to the jury occurred over a four-day period and involved a large quantity of evidence. Finally, a continuance of the trial of this case would not have involved an inordinate delay; approximately 12 months had expired at the time of trial since defendant had been reindicted. On balance, we conclude that, under the circumstances of this case, defendant's right to counsel at trial outweighed the public's interest in concluding the case on the dates set for trial.
Reversed and remanded.
NOTES
[1] Defendant was previously indicted on March 8, 2007, with trial on that indictment set for July 27, 2007. The state moved to dismiss that charge and reindicted defendant simultaneously.
[2] The court may not have received counsel's notice until June 30, 2008.
[3] During argument to the court, the prosecutor stated, "[T]here are certain witnesses in this case who are starting to experience what I would refer to as witness fatigue. They're simply they're civilian witnesses and they're just tired of being subpoenaed, making themselves available, having the case reset time and time again."